Filed 10/1/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CASSAUNDRA ELLENA, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> DEPARTMENT OF INSURANCE et al., <br><br>     Defendants and Respondents. | A137268 <br><br> (San Francisco County <br> Super. Ct. No. CGC-11-516008) |

Cassaundra Ellena appeals from a judgment of dismissal of her mandamus claim against the Department of Insurance and the Commissioner of the Department of Insurance (the commissioner; collectively, the DOI). Ellena contends, among other things, that the trial court erred when it found that she did not sufficiently allege in her pleading that the DOI violated a specific mandatory duty. We conclude that Ellena stated a viable mandamus claim because, as alleged, the commissioner violated the mandatory duty under Insurance Code sections 12921.5, subdivision (a), 12926, and 10291.5, subdivision (b),[1] to review a new group disability insurance policy form for compliance with the law prior to approving the policy for distribution in the state. Accordingly, we reverse the judgment dismissing the DOI.

**BACKGROUND**

On November 18, 2011, Ellena filed a complaint against Standard Insurance Company (Standard), Stancorp Financial Group (Stancorp), and the DOI. She alleged that Standard is a wholly owned subsidiary of Stancorp, and that Standard failed to

---

[1] All further unspecified code sections refer to the Insurance Code.

1

provide disability benefits to her under a group disability policy issued to her employer, the County of Sonoma (the policy), after she stopped working because of her lupus disease in April 2010.

Standard, according to Ellena's pleading, denied her claim for disability on August 27, 2010, based on the language of a policy form entitled "Definition of Disability." Her pleading stated that this policy form was deceptive and violated settled law in California. In her sixth cause of action, she asserted that the DOI approved the policy without complying with its mandatory duty to review the policy form in accordance with established criteria. She sought a writ of mandamus against the DOI under Code of Civil Procedure section 1085 for violating mandatory duties.

The DOI demurred, and Ellena filed a first amended complaint, alleging the same mandamus cause of action against the DOI. The DOI demurred, and the trial court sustained the demurrer with leave to amend.

On June 6, 2012, Ellena filed a second amended complaint with six causes of action. The second amended complaint set forth five causes of action against Standard and Stancorp, and included a sixth cause of action for mandamus against the DOI.

Ellena asserted that the DOI had a mandatory duty under sections 10290, 10291.5, 12921, and 12926 and under California Code of Regulations, title 10, section 2218.10 (regulation 2218.10) to review the policy to make sure it complied with California law prior to approving the policy. The policy, according to the second amended complaint, violated California law because the provisions granted to the insurance company the right to redefine Ellena's " 'Own Occupation' as an occupation other than the one which she actually performed and then, further, to deny her claim based on [its] determination that she was able to perform an occupation that was not her own; additionally, the [p]olicy violate[d] California law by requiring that for an insured to qualify for disability benefits under the 'Any Occupation' provision of the [p]olicy, the insured must be unable to perform 'all occupations'; additionally, these aforesaid provisions and other provisions in the [p]olicy contain[ed] and/or constitute[d] limitations and exclusions with respect to when an insured qualifie[d] as disabled which [were] not plain, clear, prominent or

2

conspicuous, which [misled] insureds as to their true rights under California law and which [were] buried in a coverage clause with respect to when an insured [was] eligible for benefits due to disability."**2**

Two years after approving the policy for distribution in California, the DOI, according to Ellena's pleading, defined " 'total disability' " in an agreement negotiated with another insurance company, known as the " 'California Settlement Agreement,' " as "a disability that renders one unable to perform with reasonable continuity the substantial and material acts necessary to pursue **his or her usual occupation in the usual and customary way** . . . ." (Bold in original.) Ellena asserted that this definition in the California Settlement Agreement reflected settled California law and this settled law was known to the DOI when it approved the policy. The second amended complaint stated that the " 'Definition of Disability' form [in the policy] that was 'approved' by the DOI Defendants ha[d] the effect of making it substantially easier than is permissible under settled California law for the insurer to deny benefits." The DOI's approval of the " 'Definition of Disability' provision" was, according to the second amended complaint, "a substantial factor in causing the denial of [Ellena's] claim for benefits."

---

**2** As alleged in the second amended complaint, the definition of disability in the policy provided in pertinent part as follows: "You are Disabled from your **Own Occupation** if, as a result of Physical Disease, Injury, Pregnancy, or Mental Disorder: [¶] 1. You are unable to perform with reasonable continuity the Material Duties of your **Own Occupation;** and [¶] 2. You suffer a loss of at least 20% in your indexed Predisability Earnings when working in your **Own Occupation** . . . . [¶] **Own Occupation** means any employment, business, trade, profession, calling or vocation that involves material duties **of the same general character** as the occupation you are regularly performing for your employer when disability begins. **In determining your Own Occupation, we are not limited to looking at the way you perform your job for your Employer, but we may also look at the way the occupation is generally performed in the national economy** . . . . [¶] Material duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted. **In no event will we consider working an average of more than 40 hours per week to be a Material Duty**." (Bold in original.)

3

Ellena alleged that the DOI "never actually exercised" its "discretion or performed" its "mandatory duties under" the Insurance Code to determine whether the policy complied with California law or qualified for approval under the Insurance Code. Additionally, she asserted, "Assuming that the DOI Defendants actually reviewed the 'Definition of Disability' form under the California Insurance Code, . . . , the DOI Defendants abused their discretion in approving the [p]olicy . . . ; the DOI Defendants' aforesaid abuses of discretion were palpably unreasonable, arbitrary and capricious."

Ellena sought a writ of mandate to force the DOI to revoke and/or withdraw approval of the "Definition of Disability" form in the policy or to compel the DOI to exercise its discretion to approve or revoke the "Definition of Disability" form in the policy.

On June 28, 2012, the DOI again demurred to the second amended complaint. The trial court sustained the DOI's demurrer without leave to amend. The court ruled that Ellena had not sufficiently alleged a violation of a specific mandatory duty and that a writ of mandate could not be based on general enforcement provisions or statutes involving the DOI's exercise of discretion. On October 11, 2012, the court dismissed with prejudice the DOI from the lawsuit.

Ellena filed a timely notice of appeal. On September 16, 2013, the DOI filed in this court a motion to augment the record to include exhibits attached to the second amended complaint and a request for judicial notice of, among other things, two superior court orders in other cases. We granted the unopposed motion to augment and we took the request for judicial notice under submission, stating that we would rule on this request when deciding the merits of the appeal. We hereby grant the DOI's request for judicial notice. On October 16, 2013, Ellena filed an unopposed request for judicial notice of superior court orders in other cases. We granted this unopposed request on November 6, 2013.

4

# DISCUSSION

## I. *Standard of Review*

" 'A demurrer tests the legal sufficiency of the complaint, and the granting of leave to amend involves the trial court's discretion. Therefore, an appellate court employs two separate standards of review on appeal. [Citations.] First, the complaint is reviewed de novo to determine whether it contains sufficient facts to state a cause of action. [Citation.] In doing so, we accept as true the properly pleaded material factual allegations of the complaint, together with facts that may be properly judicially noticed. Reversible error exits only if facts were alleged showing entitlement to relief under any possible legal theory. [Citations.] [¶] Second, where the demurrer is sustained without leave to amend, reviewing courts determine whether the trial court abused its discretion in doing so. [Citations.] On review of the trial court's refusal to grant leave to amend, we will only reverse for abuse of discretion if we determine there is a reasonable possibility the pleading can be cured by amendment. Otherwise, the trial court's decision will be affirmed for lack of abuse. [Citations.]' " (*G.L. Mezzetta, Inc. v. City of American Canyon* (2000) 78 Cal.App.4th 1087, 1091-1092.)

## II. *Requirements for Writ of Mandate*

A court may issue a writ of mandate to compel a public agency or officer to perform a mandatory duty. (Code Civ. Proc., § 1085; *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 868.) "[T]he writ will not lie to control discretion conferred upon a public officer or agency. [Citations.] Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent [citations]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty [citation]. [Citation.]" (*People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 491.)

A ministerial act is one that a public functionary " ' "is required to perform in a prescribed manner in obedience to the mandate of legal authority," ' " without regard to his or her own judgment or opinion concerning the propriety of such act. (*Ridgecrest Charter School v. Sierra Sands Unified School Dist.* (2005) 130 Cal.App.4th 986, 1002.)

5

"Thus, '[w]here a statute or ordinance clearly defines the specific duties or course of conduct that a governing body must take, that course of conduct becomes mandatory and eliminates any element of discretion.' " (*Carrancho v. California Air Resources Bd.* (2003) 111 Cal.App.4th 1255, 1267.)

While a party may not invoke mandamus to force a public entity to exercise discretionary powers in any particular manner, if the entity refuses to act, mandate is available to compel the exercise of those discretionary powers in some way. (*Ballard v. Anderson* (1971) 4 Cal.3d 873, 884 [mandamus proper to compel the committee to consider the application for a therapeutic abortion without requiring parental consent as petitioners were not seeking to force the committee to authorize the abortion, but they were requesting that the committee be compelled to exercise its discretion to approve or disapprove the application for abortion according to the statutory criteria]; see also *Sego v. Santa Monica Rent Control Bd.* (1997) 57 Cal.App.4th 250, 255 ["While mandamus will not lie to compel governmental officials to exercise their discretionary powers in a particular manner, it will lie to compel them to exercise them in some manner"].) Mandamus may also issue to correct the exercise of discretionary legislative power, but only where the action amounts to an abuse of discretion as a matter of law because it is so palpably unreasonable and arbitrary. (*Carrancho v. California Air Resources Bd., supra,* 111 Cal.App.4th at pp. 1264-1265.)

Ellena contends that the Insurance Code imposes a mandatory duty on the DOI to review group disability policy forms prior to approving the policy. Ellena acknowledges that the DOI has the discretion to decide whether to approve a policy, but maintains that the DOI must exercise that discretion by reviewing the policy to determine whether it does or does not comply with California law. Alternatively, Ellena asserts that if the DOI did review the policy and exercised its discretion, the approval of the disability policy in the present case constituted an abuse of discretion as a matter of law because the decision was unreasonable and arbitrary.

The question before us is whether Ellena has stated a viable claim for mandamus under either of her two theories. A demurrer must be overruled if the complaint states a

claim on any theory. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38-39.)

### III. *Mootness*

The DOI maintains that a mandamus action based on Ellena's theory and allegations that the DOI never reviewed the policy prior to approving it will have no effect on her. The DOI points out that the commissioner has the authority under section 12957 to withdraw approval of an insurance policy on a prospective basis. Thus, even if the commissioner now reviewed the policy and decided to revoke approval, such an action would have no retroactive effect and would not impact Ellena. (See § 10390.)[3]

It is unclear what effect the possible decision of the commissioner to revoke the policy would have on Ellena's claims against Standard and Stancorp, especially since the DOI has not indicated any intent to review the policy. In her second amended complaint, Ellena alleged that the DOI's approval of the " 'Definition of Disability' provision" was "a substantial factor in causing the denial of [Ellena's] claim for benefits." If, after reviewing the policy, the commissioner decided to revoke approval, this act could impact Ellena's lawsuit against Standard.

Furthermore, even if Ellena cannot personally benefit from a mandamus proceeding, this does not necessarily bar her claim. " '[I]f a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot. "Such questions [of general public concern] do not become moot by reason of the fact that the ensuing judgment may no longer be binding upon a party to the action." [Citation.]' And, in an earlier case, a Court of Appeal applied identical principles with specific reference to a writ of mandate: 'As a general

---

[3] Section 10390 reads: "A policy delivered or issued for delivery to any person in this State in violation of this chapter shall be held valid but shall be construed as provided in this chapter. When any provision in such a policy is in conflict with any provision of this chapter, the rights, duties and obligations of the insurer, the insured and the beneficiary shall be governed by this chapter."

7

proposition courts will not issue a writ of mandate to enforce an abstract right of no practical benefit to petitioner, or where to issue the writ would be useless, unenforceable or unavailing. [Citation.] However, where the problem presented and the principle involved are of great public interest, the courts have deemed it appropriate to entertain the proceedings rather than to dismiss the same as being moot.' [Citations.]" (*Ballard v. Anderson, supra,* 4 Cal.3d at pp. 876-877.)

The Insurance Code does not provide for an administrative avenue to contest the commissioner's approval of a policy form (§ 12921.3, subd. (a);[4] see also *Brazina v. Paul Revere Life Ins. Co.* (N.D. Cal. 2003) 271 F.Supp.2d 1163, 1168-1169 (*Brazina*)). Indeed, unless we consider this appeal, there will be little opportunity for a state appellate court to review the DOI's position "that California's Insurance Code and administrative regulations impose a duty on insurers to submit disability insurance policy forms to the [c]ommissioner, but do not impose a mandatory duty on the [c]ommissioner to review or approve the forms." It is clear that superior courts need direction on this issue as Ellena asked that we take judicial notice of three orders in the San Francisco Superior Court that support her position and the DOI requested that we take judicial notice of two orders in the San Francisco Superior Court that support its interpretation of the Insurance Code. (See fn. 6, *post*, at p. 11.)

Furthermore, there can be no question that the DOI's interpretation of the Insurance Code is a matter of great public interest. The question posed by this appeal is critical to determining the proper oversight role of the commissioner and to deciding whether the DOI's interpretation of the Insurance Code contravenes the express purpose of section 10291.5, subdivision (a), which is to prevent fraud and unfair trade practices and to insure that the language of all insurance policies can be readily understood and

---

**4** This statute provides: "(a) The commissioner, in person or through employees of the department, shall receive complaints and inquiries, investigate complaints, prosecute insurers [or production agencies] when appropriate and according to guidelines determined pursuant to Section 12921.1, and respond to complaints and inquiries by members of the public concerning the handling of insurance claims . . . ." (§ 12921.3, subd. (a).)

interpreted.

Accordingly, we exercise our discretion to consider Ellena's mandamus claim that the commissioner should be compelled to review the policy to determine whether it complies with California law.

### IV. *Ellena Has a Viable Claim for Mandamus*

**A.** *Compelling the Exercise of Discretion*

Ellena maintains that the trial court erred in sustaining DOI's demurrer without leave to amend against her mandamus claim because the Insurance Code requires the DOI to review any new group disability policy form under established criteria prior to approving or disapproving it for use in California and she alleged in her second amended complaint that the DOI did not review the policy.[5]  She contends that she is not asking the court to force the DOI to implement a particular remedy but is seeking an order compelling the DOI to exercise its discretion to review the policy and decide whether to approve or revoke it.  (See *Ballard v. Anderson, supra,* 4 Cal.3d at p. 884; *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442.)  The DOI responds that the Insurance Code does not mandate any duty to review a new group disability insurance policy form and Ellena is improperly requesting the court to order the DOI to exercise its discretionary power.

Discerning the nature of the DOI's duties under the Insurance Code is a matter of statutory construction.  It is well settled that when interpreting a statute we "determine and give effect to the intent of the enacting legislative body." (*People v. Braxton* (2004) 34 Cal.4th 798, 810.)  To do this, " '[w]e first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.]  If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls." (*Fitch v. Select Products*

---

[5]  In her second amended complaint, Ellena cites sections 12921, 12926, 10290, 10291.5 and regulation 2218.10 as imposing on the DOI this mandatory duty.  In her brief in this court, she also refers to section 10270.9.

*Co.* (2005) 36 Cal.4th 812, 818.) "[T]he various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (*Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 505.) If the statute is susceptible to more than one interpretation, we "may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute. [Citation.]" (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003.) Moreover, " ' "[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." [Citations.]' " (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276.)

We are not aware of any state court that has directly considered the issue before us. However, Division Four of this court in dicta (*Van Ness v. Blue Cross of California* (2001) 87 Cal.App.4th 364, 371-372) and numerous federal courts (see e.g., *Peterson v. American Life & Health Ins. Co.* (9th Cir. 1995) 48 F.3d 404, 410 (*Peterson*); *Rader v. Sun Life Assur. Co. of Canada* (N.D. Cal. 2013) 941 F.Supp.2d 1191, 1195; *Palma v. Prudential Ins. Co.* (N.D. Cal. 2011) 791 F.Supp.2d 790, 795-797 (*Palma*); *Graybill-Bundgard v. Standard Ins. Co.* (N.D. Cal. 2011) 793 F.Supp.2d 1117, 1120 (*Graybill-Bundgard*); *Firestone v. Acuson Corp. Long Term Disability Plan* (N.D. Cal. 2004) 326 F.Supp.2d 1040, 1050; *Brazina, supra,* 271 F.Supp.2d at p. 1167; *Hansen v. Ohio Nat. Life Assur.* (N.D. Cal., Aug. 1, 2011, C11-01382 MEJ) 2011 WL 3294289; *Blake v. Unumprovident Corp.* (N.D. Cal., Nov. 20, 2007, C07-04366 MHP) 2007 WL 4168235; *Sullivan v. Unum Life Ins. Co. of America* (N.D. Cal., April 15, 2004, No. C04-00326 MJJ) 2004 WL 828561) have stated that section 10291.5, subdivision (b) imposes a mandatory duty on the commissioner not to approve a new group disability policy form that is found to be ambiguous or misleading. The federal courts in *Brazina, Palma,* and *Graybill-Bundgard* rejected the insurance companies' argument that the insureds' mandamus claims against the commissioner constituted fraudulent joinder and concluded that the insured had a potential mandamus claim against the commissioner.

10

The DOI emphasizes that the federal court decisions, which are not binding on this court, were wrongly decided. The DOI discusses *Peterson, Brazina, Palma, and Graybill-Bundgard* and asserts that these courts relied on inaccurate dicta in state court decisions and/or inapplicable statutes or regulations. The DOI points out that the commissioner was not a party to these federal actions and after the federal courts remanded these cases to the state court, the commissioner was dismissed in *Brazina* and the commissioner's demurrers were sustained without leave to amend in *Palma* and *Graybill-Bundgard*.[6]

---

[6] The DOI does not cite to the record to support its assertion that the commissioner was dismissed after *Brazina* was remanded to the San Francisco Superior Court. In any event, even if the commissioner were dismissed from the case, there is nothing in this record to indicate the reasons for the commissioner's dismissal.

The DOI requested that we take judicial notice of orders in the San Francisco Superior Court sustaining without leave to amend the demurrers of the commissioner in *Palma,* No. CGC-10-503043, order filed on December 15, 2011, and *Graybill-Bundgard,* No. CGC-10-504747, order filed on February 10, 2011. The DOI also requested that we take judicial notice of the memoranda of points and authorities in support of these demurrers.

Although we hereby grant the DOI's request for judicial notice, we note that these orders are not binding on us; nor are they especially helpful. Although the DOI included the commissioner's memorandum of points and authorities in support of the demurrers, it did not include the pleadings or the memorandum of points and authorities in opposition to the demurrers. The order sustaining the demurrer without leave to amend in *Palma,* was issued by Judge Harold Kahn, the same judge sustaining the demurrer without leave to amend in the present case. Judge Peter J. Busch signed the order sustaining the demurrer without leave to amend in *Graybill-Bundgard* and this order provides no explanation or reasons for sustaining the demurrer.

On November 6, 2013, we granted Ellena's request for judicial notice of three orders from the San Francisco Superior Court that overruled the commissioner's demurrers to the plaintiffs' cause of action for mandamus. (*Guyton v. Unum Life Insurance Co.,* No. CGC-02-415586, order filed on July 17, 2003, and signed by Judge Ronald E. Quidachay; *Glick v. Unumprovident Corp.,* No. CGC-03-422858, order filed on May 7, 2004, and signed by Judge Quidachay; and *Contreras v. Metropolitan Life Insurance Co.,* No. CGC-07-462224, order filed on February 22, 2008, and signed by Judge Patrick Mahoney.) The order in *Contreras* cites to section 10291.5, subdivision (b)(1) and states that nothing in this statute suggests that the commissioner may choose

11

We need not address the DOI's extensive criticisms of the federal court decisions because, as we explain below, we independently interpret the relevant statutes in the Insurance Code. In particular, we examine the plain language of sections 12926, 12921, subdivision (a), and 10291.5.

Section 12926 provides that "[t]he commissioner shall require from every insurer a full compliance with all the provisions of this code." Section 12921, subdivision (a) states that "[t]he commissioner shall perform all duties imposed upon him or her by the provisions of this code and other laws regulating the business of insurance in this state, and shall enforce the execution of those provisions and laws." As Division Three of this court held in *Schwartz v. Poizner* (2010) 187 Cal.App.4th 592 (*Schwartz*), these provisions, by themselves, do not require the commissioner to enforce rights in a particular manner. (*Schwartz,* at p. 597.) Thus, in *Schwartz,* the plaintiff could not rely on these general enforcement provisions to force the commissioner to rescind insurance policies. (*Schwartz,* at pp. 597-598.)

In the present case, however, unlike the situation in *Schwartz,* Ellena is not seeking to require the commissioner to exercise his or her discretion in a particular manner, but is seeking to compel the commissioner to review the policy to determine whether it complies with the requirements of the Insurance Code. As already discussed, "[m]andamus will not lie to control an exercise of discretion, i.e., to compel an official to exercise discretion in a particular manner. Mandamus may issue, however, to compel an official both to exercise his discretion (if required by law to do so) and to exercise it under a proper interpretation of the applicable law." (*Common Cause v. Board of Supervisors, supra,* 49 Cal.3d at p. 442.) As federal courts have pointed out, the court in

_____

not to review a policy. Ellena also did not include the pleadings or any other documents related to these cases.

The orders submitted are not helpful to our construction of section 10291.5, subdivision (b), but they do underscore the importance of settling the question of the commissioner's duties under the Insurance Code.

12

*Schwartz* did not address this distinction.  (See, e.g., *Palma, supra,* 791 F.Supp.2d at p. 796.)

The *Schwartz* court did not analyze the language of section 10291.5.  This provision, titled "Fraudulent or unsound disability insurance," reads, as relevant here: "(a)  The purpose of this section is to achieve both of the following:  [¶]  (1)  Prevent, in respect to disability insurance, fraud, unfair trade practices, and insurance economically unsound to the insured.  [¶]  (2)  Assure that the language of all insurance policies can be readily understood and interpreted.  [¶]  (b)  The commissioner shall not approve any disability policy for insurance or delivery in this state in any of the following circumstances:  [¶]  (1)  If the commissioner finds that it contains any provision, or has any label, description of its contents, title, heading, backing, or other indication of its provisions which is unintelligible, uncertain, ambiguous, or abstruse, or likely to mislead a person to whom the policy is offered, delivered or issued. . . ."  (§ 10291.5.)

The clear language of this statute is that "[t]he commissioner *shall not approve* any disability policy for insurance or delivery" unless it meets a number of requirements.  (§ 10291.5, subd. (b), italics added.)  "The commissioner *shall* require from every insurer a full compliance with all the provisions of the code" (§ 12926, italics added) and the commissioner has an obligation to fulfill the duties imposed by the Insurance Code under section 12921.5, subdivision (a).

We recognize that the use of the word "shall" in a statute does not necessarily create a mandatory duty.  (See *County of Los Angeles v. Superior Court* (2002) 102 Cal.App.4th 627, 639.)  However, in the present case, the statute *requires* the commissioner to reject certain policies and thus compliance with this mandate demands that the commissioner review the policy.  The plain meaning of these provisions is that the commissioner has a mandatory duty to review the policy prior to approving it and the commissioner must review the disability policy to ensure it meets the requirements set forth in section 10291.5, subdivision (b).  The Insurance Code imposes on the commissioner the duty to review the policy to ensure it complies with the law.

13

The above interpretation of the Insurance Code advances the expressed objective of section 10291.5, which is to "[p]revent, in respect to disability insurance, fraud, unfair trade practices, and insurance economically unsound to the insured" and to "[a]ssure that the language of all insurance policies can be readily understood and interpreted." (§ 10291.5, subd. (a).) If the commissioner had no obligation to review a policy prior to approving it, as the DOI argues, the purpose of this statute would be thwarted.

The need for the commissioner to review disability policies prior to approving them was apparently appreciated by the Legislature as many if not most consumers do not read or understand the meaning of disability insurance policies. As Williston observes, and is commonly known, it is a "reality of the insurance business . . . that few people take time to read their policies." (28 Williston on Contracts (4th ed.) § 70:246; accord, Boardman, *Insuring Understanding* (2010) 95 Iowa L.Rev. 1075, 1077 ["Consumers do not read their insurance policies"]; Loewenstein et al., *Consumers' Misunderstanding of Health Insurance* (2013) 32 Journal of Health Economics 850, 852 ["consumers limited understanding of health insurance . . . is likely to lead to suboptimal decisions"]; Cude, *Insurance Disclosures: An Effective Mechanism to Increase Consumers' Insurance Market Power?* (2006) 24 J. Ins. Reg. 57, ["many consumers do not read and understand insurance disclosures and misinterpretations are likely among at least some consumers who do read disclosures].")[7] Because "the policy is seldom read

---

**7** Indeed, as noted in section 211 of the Restatement Second of Contracts, parties who make regular use of standardized forms of agreement ordinarily do not even expect their customers "to understand or even to read the standard terms. One of the purposes of standardization is to eliminate bargaining over details of individual transactions, and that purpose would not be served if a substantial number of customers retained counsel and reviewed the standard terms." (Rest.2d Contracts, § 211, com. b.) Instead of reading and trying to understand standard terms, customers "trust to the good faith of the party using the form and to the tacit representation that like terms are being accepted by others similarly situated. But they understand that they are assenting to the terms not read or understood, subject to such limitations as the law may impose." (*Ibid*.)

Some authorities believe the audience of those who draft insurance policies is not present or potential customers, but courts. As has been noted, "the sheer act of having interpreted a clause in a way that allows for predictable application in the future adds

14

[and] almost never understood[,] . . . an insurance transaction is a one-sided 'bargain'; if it merits the label 'contract,' it is in a very specialized, not an ordinary sense." (Schultz, *The Special Nature of the Insurance Contract* (1950) 15 Law and Contemp. Probs. 376, 377.) The failure to read insurance contracts is not, however, "such negligence as to bar reformation, Williston points out, "because insurance contracts, as distinguished from other contracts, are complex and worded in language or by legislation, so that the insured would have difficulty in understanding the terms of the policy even if well read." (28 Williston on Contacts, *supra*, § 70.246.)

Unless the commissioner reviews the policy, how can he or she "prevent, in respect to disability insurance, fraud, unfair trade practices, and insurance economically unsound to the insured," or adequately "[a]ssure that the language of all insurance policies can be readily understood and interpreted" by those who take the trouble to read them, as required by subdivision (a) of section 10291.5? Without reviewing the policy, how could the commissioner responsibly disapprove any disability policy containing provisions that are "unintelligible, uncertain, ambiguous, or abstruse, or likely to mislead a person to whom the policy is offered, delivered or issued," as required by subdivision (b) of that statute?

The DOI claims that section 10291.5 contains a statement of legislative intent and goals and does not force the commissioner to take a particular action. The DOI quotes the following from the *County of Los Angeles v. Superior Court, supra,* 102 Cal.App.4th 627, "An enactment does not create a mandatory duty if it merely recites legislative goals and polices that must be implemented through a public agency's exercise of discretion." (*Id.* at p. 639; see also *Shamisian v. Department of Conservation* (2006) 136 Cal.App.4th

---

value to that clause. With insurance, the value is great enough that this generally makes it more likely, not less, that drafters will retain poor language. With ordinary commercial contracts, the value of certainty will sometimes outweigh a less than ideal clause content, and sometimes not. But where drafters—such as insurers—care more that a clause have a fixed meaning than a particular meaning, path dependence can preclude otherwise desirable improvements in the language." (Boardman, *Contra Proferentem* (2006) 104 Mich. L.Rev. 1105, 1107.)

621, 633.) The DOI claims that section 10291.5, subdivision (a) sets forth the legislative goals and subdivision (b)(1) grants the commissioner discretion because it states that the commissioner shall not approve any disability policy form "[i]f the commissioner *finds* that it contains any provision . . . which is unintelligible, uncertain, ambiguous, or abstruse, or likely to mislead . . . ." (§ 10291.5, subd. (b)(1), italics added.)

Ellena's mandamus action is not directed towards forcing the commissioner to comply with section 10291.5, subdivision (a). This subdivision sets forth the goals and intent of the Legislature, which can be achieved only if the commissioner reviews a disability policy form to make sure it meets the criteria set forth in subdivision (b) of section 10291.5 prior to approving the policy.

The Legislature added section 10291.5 to the Insurance Code by a statute in 1941. The original statute read: "The commissioner shall not approve any disability policy for issuance or delivery in this State if he finds that it contains any provision, or has any title, heading, backing, or other indication of its provisions which is likely to mislead a person to whom the policy is offered, delivered, or issued." (Former § 10291.5.) The original statute also specified that the "commissioner shall not approve" a disability policy form "if" the commissioner found that the policy contained a prohibited provision. The use of the word "if" did not give the commissioner discretion to approve, either expressly or implicitly, the policy for distribution without ever reading the terms of the policy. Rather, the use of the word "if" made it clear that approval could not be given if the policy contained a prohibited provision.

The 1949 amendment to section 10291.5 did not eliminate the insurance commissioner's duty to safeguard the public from illegal disability insurance policies. The legislative history to this amendment supports the conclusion that the statute requires the commissioner to review the disability policy form prior to approving it. The amendment, among other things, "set[] up an elaborate set of minimum standards for disability insurance for the stated purpose of preventing 'in respect to disability insurance, fraud, unfair trade practices and insurance economically unsound to the insured.' " (Beach Vasey, Leg. Memorandum to Governor Warren, Jul. 30, 1949.) The

16

analysis section in the Report on Senate Bill No. 711, dated July 12, 1949, stated that section 10291.5 "*prohibits* the Insurance Commissioner from approving any disability policy if it contains certain provisions or does not contain others.  Bill adds a declaration of intention for the section, stating that it is to prevent fraud and unfair trade practices and economically unsound insurance."  (Italics added.)  The use of the word "prohibits" leaves no doubt that the insurance commissioner continues to have a duty to determine if the policy contains the barred provisions.

The Legislature's review of section 10291.5 in 1951 provides further support for the conclusion that the commissioner has a mandatory duty to review all new policy forms that it approves for distribution.  That year, the Legislature not only amended section 10291.5 (Stats. 1951, ch. 1) but stated the following in the Historical and Statutory Notes:  " 'Sec. 2.  As is more fully set forth in Section 3 hereof, this act is intended to be declaratory of existing law.  [¶]  Sec. 3.  This act is hereby declared to be an urgency measure . . . .  The following is a statement of the facts constituting such necessity.  [¶]  Insurance Code Section 10291.5, which is amended by this act, was amended by Chapter 1486 of the Statutes of 1949 to establish new and additional standards for disability insurance policies, which are required by law to be approved by the Insurance Commissioner before they can be issued or delivered in this State.' "  Section 3 further explains that there had been some confusion about how the new law was supposed to apply to policies that had been approved before the new standards of section 10291.5 went into effect in 1949.  What is important to our analysis, however, is that the Legislature, in enacting a statute that was "declaratory of existing law," made absolutely clear that "disability insurance policies . . . *are required by law to be approved by the Insurance Commissioner before they can be issued or delivered in this State."* (Italics added.)

The DOI asserts that sections 10290 and 10291 confirm that the decision to approve a group policy form is purely discretionary.  Section 10290, titled, "Prerequisites to issuance and delivery of policy," provides that "[a] disability policy shall not be issued or delivered to any person in" California until a copy of the policy form is filed with the

17

commissioner and either "[t]hirty days expires without notice from the commissioner after such copy is filed, or," "[t]he commissioner gives his written approval prior to that time." (§ 10290.) Section 10291 states that it is unlawful for any insurer to issue a policy if "the commissioner notifies the insurer" in writing that the filed form does not comply with the requirements of the law. The DOI maintains that section 10291.5, subdivision (b) merely clarifies the scope of discretion granted to the commissioner if the commissioner decides to review a submitted policy form.

Sections 10290 and 10291 do not relieve the commissioner from the obligation to approve a disability policy form before insurers are allowed to use it. Rather, these statutes provide the commissioner with the power to approve a policy explicitly with a writing or to approve it implicitly by failing to act within a specified time. Thus, the commissioner has the discretion to choose the manner in which he or she will approve of a policy. In those situations where the commissioner decides not to approve the policy— after fulfilling his or her obligation of reviewing the policy—the commissioner's opinion and reasons for rejection must be in writing and sent to the insurer.

The DOI also relies on section 12957 in support of its argument that it has no mandatory duty to review the policy under section 10291.5, subdivision (b). Section 12957 reads: "The commissioner shall not withdraw approval of a policy previously approved by him or her except upon those grounds as, in his or her opinion, would authorize disapproval upon original submission thereof. Any withdrawal of approval shall be in writing and shall specify the ground thereof. If the insurer demands a hearing on a withdrawal, the hearing shall be granted and commenced within 30 days of the filing of a written demand with the commissioner. Unless the hearing is commenced, the notice of withdrawal shall become ineffective upon the 31st day from and after the date of filing of the demand." (§ 12957.) The fact that the commissioner's authority to revoke approval of a policy pursuant to section 12957 is discretionary has no bearing on the commissioner's authority to approve a policy without reviewing it.

The DOI contends that section 10191, subdivision (a), supports its contention that it has discretion to decide whether to review a policy. Subdivision (a) of this statute

18

provides that "[t]he commissioner may, from time to time as conditions warrant, after notice and hearing, promulgate such reasonable rules and regulations, and amendments and additions thereto, as are necessary or advisable, to establish and maintain a procedure for the filing and approval of documents, as defined in this section, prior to their issuance, delivery, or use in this state, in lieu of the requirements of submission, filing, or approval for the documents presently provided" in various sections of the Insurance Code, including sections 10270.9 and 10290.  (§ 10191, subd. (a).)  The DOI argues that this statute delegates to the commissioner the discretion to decide which documents to review in this alternative procedure.

Section 10191, subdivision (a), contrary to the DOI's argument, does not indicate that the commissioner may approve a policy without discharging his or her responsibility to make certain that the new policy form complies with section 10291.5, subdivision (b).  Indeed, section 10291.5, subdivision (b) is not among the several Insurance Code sections enumerated in section 10191, subdivision (a) as being subject to authorized rule making "in lieu of the requirements of submission, filing, or approval for the documents presently provided in [many sections of the code]."  Section 10191, subdivision (a), is wholly inapplicable to the interpretation of section 10291.5, subdivision (b).

Furthermore, subdivision (d) in section 10191 states:  "In promulgating any such rules and regulations, the commissioner shall, so far as practical, describe or define certain provisions:  (1) which the commissioner will authorize without review when accompanied by a certification prescribed by him or her by rule, and (2) which the commissioner will under no circumstances approve."  The fact that this provision allows the commissioner to prescribe circumstances in which specified policy provisions may be authorized without review, indicates that all other policy provisions must be reviewed.

We conclude that the Insurance Code requires that the commissioner review a disability policy form prior to approving the policy.[8]  The trial court therefore erred in

---

[8] Ellena also cites section 10270.9 and regulation 2218.10 as imposing a mandatory duty on the commissioner to review the policy.  Section 10270.9 provides that "[n]o group disability policy shall be issued or delivered in this state nor . . . shall an

finding that Ellena failed to state a claim for mandamus against the DOI based on her allegations that the commissioner did not review the policy to ensure that it complies with California law prior to approving the policy for distribution in California.

## B. *Abuse of Discretion*

Ellena also claims that she pled in her sixth cause of action the essential elements of an alternative cause of action for a writ of mandate based on the allegation that, if the

insurer provide or agree to provide group disability coverage until a copy of the form of the policy is filed with the commissioner and approved by him in accordance with Article 2 of this chapter as meeting in substance the reasonably applicable provisions and requirements of . . . Articles 3a, 4a, and 5a of this chapter . . . ." (§ 10270.9, fns. omitted.)

"[N]o group disability policy shall be issued or delivered to any person in this state nor shall any endorsement for any such policy be issued which contains any provision contradictory, in whole or in part, of any of the provisions promulgated by the commissioner as being required or optional or alternative provisions to be incorporated into such policy in accordance with the rules promulgated by him for their use." (§ 10270.9.)

Regulation 2218.10 states in relevant part: "(a)  This regulation shall control the filing of all group and blanket life and group disability insurance documents required by law to be filed by the Sections cited in [section 10191] except the following which must [be] submitted for prior substantive review in accord with contemporary Department standards:  [¶]  (1)  Document filings involving concepts of insurance or types of coverage which may be considered as uncommon or unusual and which are not encompassed in any form of the insurer authorized by this Department at the time of the said filing, nor in any form filed in this State from which the submitted form has been copied."  Ellena argues that this regulation required the DOI to conduct a "substantive review in accord with contemporary Department standards" prior to approving certain group disability policies because her policy contained a concept of insurance and recovery that might be considered as uncommon or unusual.

The DOI objects to Ellena's reliance on section 10270.9, since she did not cite this statute in her second amended complaint or refer to it in the trial court.  The DOI also contends, among other things, that this statute and regulation 2218.10 do not require any action of the commissioner but describe actions the insurer must take.  We agree that this statute and regulation do not impose, by themselves, any mandatory duty on the commissioner but we also note that our construction of other provisions in the Insurance Code, which oblige the commissioner to make certain the policy conforms to the law prior to approving the policy, is not inconsistent with the language of section 10270.9 or regulation 2218.10.

20

commissioner did review the policy and approve it, such an approval was an abuse of discretion.

We have concluded that Ellena's sixth cause of action states a viable claim for writ of mandate based on her allegation that the commissioner failed to review the group disability policy prior to approving it as required by the Insurance Code. Since the trial court's order sustaining the demurrer as to the sixth cause of action against the DOI must be reversed, we need not determine whether that cause of action is also viable on Ellena's alternative theory that approval of the policy was an abuse of discretion.[9] "A demurrer does not lie to a portion of a cause of action." (*PH II, Inc. v. Superior Court* (1995) 33 Cal.App.4th 1680, 1682 [reversing demurrer sustained to legal malpractice cause of action because plaintiff alleged at least one negligent act].)

## DISPOSITION

The order entering a judgment of dismissal in favor of the DOI is reversed and the matter is remanded to the superior court. The superior court is directed to vacate its order sustaining the DOI's demurrer without leave to amend and to enter a new and different order overruling the demurrer. Ellena is awarded the costs of appeal.

_____
Kline, P.J.

We concur:

_____
Richman, J.

_____
Brick, J.*

_____

[9] The trial court did not expressly rule on Ellena's claim of an abuse of discretion.

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21

Trial Court: San Francisco City and County Superior Court

Trial Judge: Hon. Harold Kahn

Attorney for Appellant: Law Office of Bennett M. Cohen
Bennett M. Cohen

Attorneys for Respondents: Kamala D. Harris
Attorney General of California

Paul D. Gifford
Senior Assistant Attorney General

Joyce E. Hee
Supervising Deputy Attorney General

Anne Michelle Burr
Deputy Attorney General