Filed 8/2/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HNHPC, INC., | |
| Plaintiff and Appellant, | G061298 |
| v. | (Super. Ct. No. 30-2021-01221014) |
| DEPARTMENT OF CANNABIS CONTROL et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Gregory H. Lewis, Judge.  Reversed.

Law Office of Jeff Augustini and Jeff Augustini for Plaintiff and Appellant.

Rob Bonta, Attorney General, Harinder K. Kapur, Assistant Attorney General, Joshua B. Eisenberg and Ethan A. Turner, Deputy Attorneys General, for Defendants and Respondents.

\*          \*          \*

Plaintiff HNHPC, Inc., appeals from a judgment entered after the court sustained, without leave to amend, the demurrer of defendants the Department of Cannabis Control (the Department) and Nicole Elliott (collectively defendants) to the first amended petition and complaint (FAP). The FAP alleged the Department failed to perform its mandatory duties and/or failed to properly perform discretionary duties under the Medicinal and Adult-Use Cannabis Regulation and Safety Act (MAUCRSA). (Bus. & Prof. Code, § 26000 et seq.)[1] Among other things, section 26067 requires the Department to "establish a track and trace program for reporting the movement of cannabis and cannabis products throughout the distribution chain." (§ 26067, subd. (a).) To facilitate administration of the track and trace program, the statute also requires the Department to create an electronic database. (*Id*., subd. (b)(1).) The statute states: "The database *shall be designed to flag irregularities* for the department to investigate." (*Id*., subd. (b)(2), italics added.) While the FAP acknowledged the Department created a track and trace system, it alleged the system does not flag irregularities as required by section 26067. Plaintiff accordingly sought mandamus and injunctive relief compelling defendants to comply with their duties and mandating they create and maintain a track and trace system capable of identifying and flagging questionable information for further investigation.

In sustaining defendants' demurrer, the court took judicial notice of two government contracts with a contractor to design the track and trace system and the Department's budget request for the 2021-2022 fiscal year. Relying on these documents, the court found the Department had complied with its ministerial duties under section 26067.

---

[1] All further statutory references are to the Business and Professions Code unless otherwise stated.

On appeal, plaintiff contends the court erred by taking judicial notice of the documents and by sustaining the demurrer. Assuming, without deciding, that the court properly took judicial notice of the documents, the FAP still states a claim for a writ of mandate and injunctive relief because the judicially noticed documents do not contradict the FAP's allegations. Because the FAP adequately pleaded facts to state a cause of action for a writ of mandate and for injunctive relief, we reverse the judgment.

FACTS

*The First Amended Petition and Complaint*

In November 2021, plaintiff filed the FAP against defendants asserting causes of action for: (1) a peremptory writ of mandate; and (2) injunctive relief. Plaintiff alleged it is licensed by the State of California and City of Santa Ana to operate a cannabis dispensary. With respect to the Department, plaintiff alleged it "is responsible for, among other things, establishing, implementing, maintaining, and enforcing a 'track and trace program for reporting the movement of cannabis products throughout the distribution chain,' which was expressly mandated to include a 'database' that 'shall be designated to flag irregularities for the department to investigate.'" Elliot is alleged to be the Director of the Department.

According to the FAP, the Department failed to perform its mandatory duties and/or failed to properly perform discretionary duties under MAUCRSA. (§ 26000 et seq.) Relying on section 26067, the FAP emphasized the Department was required by the Legislature to create a track and trace system that "'shall be designed to flag irregularities for the department to investigate . . . .'"

Although the Department created and implemented a track and trace system called Marijuana Enforcement Tracking Report and Compliance (METRC) the system allegedly did not flag for irregularities. As a result, the FAP alleged there is an "exponential rise of 'burner distributors' . . . that conceal and launder State-grown

3

cannabis for delivery to illegal dispensaries and other unregulated markets within the State as well as for the illegal transport across state lines, all without paying significant legally mandated taxes . . . that other law abiding cannabis licensees [such as plaintiff] are required . . . to pay to the State." The increased use of burner distributors (Burner Distros) allegedly harmed the public and licensed cannabis operators because the Burner Distros undercut legitimate distributors and dispensaries by selling cheaper, unregulated, and untaxed cannabis products. In short, the FAP alleged the Department bolstered "the illegal black market in California and . . . greatly encouraged the illegal export of cannabis across state lines" "by refusing to perform its ministerial duty to flag irregularities within the track and trace system."

The FAP further alleged the current track and trace system could be designed or modified "to flag . . . irregularities and to easily identify Burner Distros, but it would require the State to amend its agreement with the developer of METRC to authorize the work necessary to do so." The Department allegedly refused to modify the track and trace system to comply with the law and the Department's mandatory duties. To the extent defendants had discretion in the creation, implementation, or operation of the track and trace system, including the elements to be flagged for investigation, the FAP alleged defendants abused their discretion.

Based on the above allegations, plaintiff sought mandamus and injunctive relief compelling defendants to comply with their duties and mandating they create and maintain a track and trace system capable of identifying and flagging questionable information for further investigation.

*Defendants' Demurrer*

In December 2021, defendants filed a demurrer. They argued the FAP was speculative and conclusory, plaintiff failed to allege the elements of traditional mandamus relief, and injunctive relief was unwarranted. With respect to mandamus

4

relief, defendants argued they satisfied any mandatory duties under section 26067. They noted there was a track and trace system in place, and the Department "contracted for the design of an electronic database and specifically identified the need to flag irregularities." They further emphasized the relevant contract established a methodology for ongoing cooperation between the Department and a third-party company to develop criteria for flagging irregularities. Finally, defendants noted they allocated resources for strategic enforcement efforts. Beyond these duties, defendants argued any remaining duties were discretionary, including the creation of a track and trace system and the deadline to complete the design of the required electronic database.

In support of their demurrer, defendants filed a request for judicial notice and asked the court to take judicial notice of three documents pursuant to Evidence Code section 452, subdivisions (c) and (h): (1) a 2017 contract between the California Department of Food and Agriculture and Franwell, Inc.;[2] (2) a 2021 contract between the California Department of Food and Agriculture and METRC, Inc.; and (3) the Department's budget request for the 2021-2022 fiscal year.

The two contracts were agreements with a contractor to design the California cannabis track and trace (CCTT) system. Among other things, the initial and renewed contracts identified various business needs. In identifying one of those business needs, the contracts stated: "The Licensing Authorities need to be aware of 'irregular' cannabis distribution chain activity (e.g. activity that falls outside expected values and statistical norms). The Licensing Authorities will designate the criteria used to flag irregular activity and will refine this criteria over time. Therefore, the [cannabis activity

---

[2]      Prior to the Department, the California Department of Food and Agriculture was one of the agencies responsible for licensing and regulating commercial cannabis activity in the state. (§ 26010.7, subd. (a) ["the Department . . . shall succeed to and be vested with all the duties, powers, purposes, functions, responsibilities, and jurisdiction of the Bureau of Cannabis Control, . . . the State Department of Public Health, and the Department of Food and Agriculture"].)

tracking] solution must automatically flag irregularities based on identified criteria and allow the Licensing Authorities to review the specific cannabis distribution chain activity information that is flagged as irregular."

The Department's budget request for the 2021-2022 fiscal year included a section on the Department's "[i]mplementation [p]lan." The plan included "continued enhancements to licensing and track and trace systems." It also appears the Department sought funding for analysis of data aggregated through the CCTT platform, to "[c]onduct more strategic and streamlined compliance and enforcement processes," and to hire information technology staff for the CCTT team.

*The Court's Order and Judgment*

In January 2022, the court granted defendants' request for judicial notice and sustained the demurrer without leave to amend. With respect to the request for judicial notice, the court found the documents were official acts and records of a state agency and were not reasonably subject to dispute. (Evid. Code, § 452, subds. (c), (h).) The court noted: "'Where, as here, judicial notice is requested of a *legally operative document*—like a contract—the court may take notice not only of the fact of the document and its recording or publication, but also facts that clearly derive from its *legal effect* . . . . Moreover, whether the fact derives from the legal effect of a document or from a statement within the document, the fact may be judicially noticed where, as here, the fact is not reasonably subject to dispute.'"

With respect to plaintiff's petition for writ of mandate, the court concluded the judicially noticed documents demonstrated the Department complied with its ministerial duty. The court added that plaintiff did "not have standing to micro-manage the [Department's] compliance. The manner of compliance is left to [the Department's] discretion." Because the Department complied with its mandatory duty under section 26067, the court found there could be no preliminary injunction.

6

Finally, the court denied leave to amend. The court noted plaintiff requested leave to amend because most of the Department's arguments were based on uncertainty, ambiguity, or inconsistency. But the court emphasized it sustained the demurrer "based on [the Department's] compliance with the duty to implement a track and trace electronic database." The court accordingly held there was no way plaintiff could cure this defect.

The court entered judgment in favor of defendants in March 2022, and plaintiff filed a timely notice of appeal.

DISCUSSION

Plaintiff contends the court erred by taking judicial notice of the contracts and the Department's budget request and by sustaining the demurrer. Plaintiff alternatively argues the court erred by denying leave to amend. Assuming, without deciding, that the court properly took judicial notice of the documents, the FAP still states a claim for a writ of mandate and injunctive relief because the documents do not contradict the FAP's allegations. Contrary to the court's holding, the documents do not conclusively show the Department created an electronic database that flags irregularities for further investigation. We accordingly reverse the judgment.

*Applicable Law*[3]

In 2015, the Legislature enacted the Medical Marijuana Regulation and Safety Act, which among other things, created a licensing scheme for medical marijuana. (Former § 19300 et seq.; Stats. 2015, ch. 689, § 4; *Safe Life Caregivers v. City of Los Angeles* (2016) 243 Cal.App.4th 1029, 1045.) After passage of Proposition 64 (the

---

[3] Defendants summarize various details about the laws that preceded MAUCRSA. We briefly summarize those laws for background, but we do not include all the details as they are not necessary to resolve the instant case.

7

Control, Regulate, and Tax Adult Use Marijuana Act) in 2016 (*People v. Castro* (2022) 86 Cal.App.5th 314, 320), section 26067 (added by Stats. 2017, ch. 27, § 58) became law.

In 2017, pursuant to a statewide voter initiative, California enacted MAUCRSA, which included an amended version of section 26067. (§ 26000 et seq.). The purpose of MAUCRSA is "to establish a comprehensive system to control and regulate the cultivation, distribution, transport, storage, manufacturing, processing, and sale of" medicinal and adult-use cannabis. (*Id*., subd. (b).) The statute also "sets forth the power and duties of the state agencies responsible for controlling and regulating the commercial medicinal and adult-use cannabis industry." (*Id*., subd. (c).)

Section 26067, subdivision (a)(1)-(5) provides: "[T]he [D]epartment shall establish a track and trace program for reporting the movement of cannabis and cannabis products throughout the distribution chain that utilizes a unique identifier and is capable of providing information that captures" various details. At a minimum, the captured information includes the licensee from which the product originated, the licensee receiving the product, the transaction date, the unique identifier for the cannabis or cannabis product, the date of retail sale to a customer, whether the sale is on the retail premises or by delivery, and information relating to cannabis and cannabis products leaving the licensed premises in a delivery vehicle. (*Ibid*.)

Section 26067, subdivision (b)(1) provides: "The [D]epartment, in consultation with the California Department of Tax and Fee Administration, shall create an electronic database containing the electronic shipping manifests to facilitate the administration of the track and trace program, which shall include, but not be limited to, the following information: [¶] (A) The variety and quantity or weight of cannabis or cannabis products shipped. [¶] (B) The estimated times of departure and arrival. [¶] (C) The variety and quantity or weight of cannabis or cannabis products received. [¶] (D) The actual time of departure and arrival. [¶] (E) A categorization and the unique identifier of the cannabis or cannabis product. [¶] (F) The license number issued by the

8

department for all licensees involved in the shipping process, including, but not limited to, cultivators, manufacturers, distributors, and retailers." As relevant here, section 26067, subdivision (b)(2), which is central to this appeal, states: "The database *shall be designed to flag irregularities* for the department to investigate." (Italics added.)

*Standard of Review*

"On appeal from a judgment after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment on whether the complaint states a cause of action as a matter of law. [Citation.] We give the complaint a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citation.] We deem all properly pleaded material facts as true. [Citation.] We must also accept as true those facts that may be implied or inferred from those expressly alleged." (*McMahon v. Craig* (2009) 176 Cal.App.4th 1502, 1508-1509.) "''We also consider matters which may be judicially noticed.''" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)

"While the decision to sustain . . . a demurrer is a legal ruling subject to de novo review on appeal, the granting of leave to amend involves an exercise of the trial court's discretion." (*McMahon v. Craig*, *supra*, 176 Cal.App.4th at p. 1509.)

*Request for Judicial Notice*

At the outset, the parties disagree as to whether the court properly took judicial notice of the contracts for the design of the CCTT system and the Department's budget request for the 2021-2022 fiscal year. Plaintiff acknowledges judicial notice can be taken of "[o]fficial acts of the legislative, executive, and judicial departments of . . . any state of the United States." (Evid. Code, § 452, subd. (c).) But plaintiff argues a court cannot take judicial notice of a public agency's contract with a private party. Plaintiff also claims the court could not take judicial notice of facts asserted in the

contracts.  The Department disagrees and contends, "Entering into contracts and requesting funding from the legislature clearly fall within" the scope of Evidence Code section 452, subdivision (c).  The Department also argues the documents are judicially noticeable under Evidence Code section 452, subdivision (h) because their "authenticity . . . is not reasonably subject to dispute as they have been authenticated by the applicable custodian of records or published online, and are thus subject to immediate and accurate determination."  Assuming, without deciding, that the documents were judicially noticeable, they do not contradict the allegations in the FAP.  As discussed *infra*, the documents do not show the Department complied with its statutory duties.

*Sufficiency of the FAP*

        A.  Writ of Mandate Cause of Action

        Plaintiff's first cause of action seeks a writ of mandate for alleged violations of section 26067, which requires, *inter alia*, the Department "in consultation with the California Department of Tax and Fee Administration" to establish "an electronic database containing shipping manifests to facilitate the administration of the track and trace program."  (*Id.*, subd. (b)(1).)  "The database *shall be designed to flag irregularities* for the department to investigate."  (*Id.*, subd. (b)(2), italics added.)  Plaintiff argues the FAP stated a viable claim for a writ of mandate and the court erred by finding the Department had complied with its mandatory duties.  We agree.

        "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . ."  (Code Civ. Proc., § 1085, subd. (a).)  A writ of mandate "must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law."  (Code Civ. Proc., § 1086.)  "'Mandamus . . . is the traditional remedy for the failure of a public official to perform a legal duty.'"  (*People for Ethical Operation of Prosecutors ETC. v.*

10

*Spitzer* (2020) 53 Cal.App.5th 391, 407.)  To adequately state a claim for the issuance of a writ of mandate, a petitioner must allege:  (1) "the public official or entity had a ministerial duty to perform"; and (2) "the petitioner had a clear and beneficial right to performance."  (*Physicians Committee for Responsible Medicine v. Los Angeles Unified School Dist.* (2019) 43 Cal.App.5th 175, 184.)  We address each element in turn below.

### 1. Ministerial Duty

"'A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his [or her] own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists.  Discretion . . . is the power conferred on public functionaries to act officially according to the dictates of their own judgment.'" (*AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 700.)  "Generally, mandamus may be used only to compel the performance of a duty that is purely ministerial in character.  [Citaiton.]  The remedy may not be invoked to control an exercise of discretion, i.e., to compel an official to exercise discretion in a particular way."  (*Ridgecrest Charter School v. Sierra Sands Unified School Dist.* (2005) 130 Cal.App.4th 986, 1002.)  "While a party may not invoke mandamus to force a public entity to exercise discretionary powers in any particular manner, if the entity refuses to act, mandate is available to compel the exercise of those discretionary powers in some way."  (*Ellena v. Department of Ins.* (2014) 230 Cal.App.4th 198, 205 (*Ellena*).)  Whether a statute imposes a ministerial duty is a question of statutory interpretation.  (*AIDS Healthcare Foundation*, at p. 701.)

Defendants contend the Department's duty under section 26067, subdivision (b)(2) was discretionary rather than ministerial.  They argue "creating an electronic database that flags irregularities is an enterprise that requires creativity, strategy, and many decisions made with overall policy goals and current industry trends

11

in mind. It does not involve carrying out a ministerial function or meeting a statutory deadline." We disagree with defendants' characterization of the Department's duty.

The statute expressly requires the Department to establish an electronic database that "*shall* be designed to flag irregularities for the department to investigate." (§ 26067, subdivision (b)(2), italics added.) Section 19 of the same code states: "'Shall' is mandatory and 'may' is permissive." (*Ibid*.) "We recognize that the use of the word 'shall' in a statute does not necessarily create a mandatory duty." (*Ellena*, *supra*, 230 Cal.App.4th at p. 211.) But, in the instant case, the statute *requires* the Department to design the electronic database to flag irregularities. (*Wittenburg v. Beachwalk Homeowners Assn.* (2013) 217 Cal.App.4th 654, 667 ["'Ordinarily, the word "may" connotes a discretionary or permissive act; the word "shall" connotes a mandatory or directory duty'"]; *Walt Rankin & Associates, Inc. v. City of Murrieta* (2000) 84 Cal.App.4th 605, 614 [same].) The Department did not have discretion to disregard the express flagging mandate. The court accordingly did not err by finding the Department's duty under section 26067 was ministerial. The FAP likewise adequately alleged the Department's duty under section 26067 was ministerial.

Relying on the judicially noticed contracts, defendants next claim the Department complied with its statutory duty so there is nothing to compel. The court likewise found the judicially noticed documents demonstrated the Department complied with its ministerial duty. Not true. The contracts and budget request do not end the inquiry. The Department did not have a duty to enter into a contract but to establish an electronic database that actually flags irregularities. (§ 26067, subd. (b)(2).) The fact still remains the full performance and completion of the contract per its terms—i.e., that the Department provided flagging criteria to the developer who in turn incorporated it into the system—is openly in dispute.

12

The FAP likewise alleged the Department had to create *and* implement a system that flagged irregularities, but the current CCTT system allegedly does not flag irregularities as legally required. Indeed, the FAP alleged the Department "faile[ed] to perform (or to properly perform as required) their legal duty to implement a system to properly track and flag irregularities"; and plaintiff "seeks to *compel* [defendants] to actually perform their mandatory and/or discretionary legal duties, including . . . the creation and operation of a track and trace system that *in fact* is designed to track and trace cannabis throughout the entire process, and to identify and flag irregularities and questionable transactions for further [investigation]—something it does not do now." The FAP emphasizes "the track and trace system they designed and implemented cannot and is not flagging irregularities and questionable information that would, *inter alia*, reveal unlawful conduct . . . ." The judicially noticed documents do not contradict any of these allegations as a matter of law. (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1055 [complaint's allegations may be disregarded if judicially noticed facts contradict the allegations].)

In any event, the FAP also adequately alleges the Department abused its discretion. Mandamus may be used to correct an abuse of discretion. (*American Board of Cosmetic Surgery v. Medical Board of California* (2008) 162 Cal.App.4th 534, 547.) When reviewing an exercise of discretion, "the judicial inquiry . . . addresses whether the public entity's action was arbitrary, capricious or entirely without evidentiary support, and whether it failed to conform to procedures required by law." (*California Public Records Research, Inc. v. County of Stanislaus* (2016) 246 Cal.App.4th 1432, 1443.) The FAP alleges the Department chose not to incorporate flagging capabilities into the CCTT system as required by law and by failing to design the system to track basic irregularities. The judicially noticed documents do not contradict any of these allegations or show the Department actually exercised discretion with respect to the flagging capabilities.

13

## 2. Standing

Turning to the standing question, we conclude plaintiff adequately alleged the existence of a clear, present, and beneficial right to the remedy it sought. (*Ellena*, *supra*, 230 Cal.App.4th at p. 211.) Normally, a party must be "beneficially interested" to have standing to seek a writ of mandate. (Code Civ. Proc., § 1086.) "'The requirement that a petitioner be "beneficially interested" has been generally interpreted to mean that one may obtain the writ only if the person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.'" (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165.)

Plaintiff's interests here surely suffice. Plaintiff alleged it would directly and substantially benefit from requiring the Department to comply with the laws intended to protect it. As a state cannabis licensee who "'play[s] by the rules," plaintiff alleged it was harmed by the Department's refusal to implement a CCTT system that in fact flags irregularities. The FAP explains defendants "have substantially undermined the competitiveness and financial success of operators such as [plaintiff]" by allowing illegal dispensaries and black market sellers to sell cannabis at significantly lower prices. Given these allegations, plaintiff has adequately alleged standing to pursue a claim for a writ of mandate. (*Save the Plastic Bag Coalition v. City of Manhattan Beach*, *supra*, 52 Cal.4th 155, 165 ["""One who is in fact adversely affected by governmental action should have standing to challenge that action if it is judicially reviewable"""].)

14

According to defendants, "the prediction that forcing the Department to take some additional or different action would result in a reduction in criminal competition to licensed operators is speculative . . . ." But this argument raises factual questions that cannot be determined on demurrer. (*Doheny Park Terrace Homeowners Assn., Inc. v. Truck Ins. Exchange* (2005) 132 Cal.App.4th 1076, 1098 [finding the plaintiff "was only required to plead ultimate facts" and "[w]ether it [could] produce . . . evidence that will in fact support all or any of those allegations . . . is another matter"].)

Because the FAP adequately alleged the requirement of beneficial interest, we need not address the parties' arguments as to whether plaintiff also has public interest standing.

### B. Claim for Injunctive Relief

In its second cause of action, plaintiff seeks an injunction compelling defendants "to comply with their mandatory and/or discretionary legal duties vis-à-vis the track and trace system and their enforcement obligations under State law, and mandating that they create and maintain a track and trace system that is capable of identifying and flagging . . . questionable transactions and information . . . ."

Defendants note injunctive relief is a remedy and not a cause of action. This is true. (*Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 984.) Plaintiff's claim is really a request for an injunction and derives from the allegations of the mandate claim. Because plaintiff has pled a viable claim for a writ of mandate, injunctive relief also is available. (*Korean American Legal Advocacy Foundation v. City of Los Angeles* (1994) 23 Cal.App.4th 376, 399 ["'a cause of action must exist before injunctive relief may be granted'"].)

15

## DISPOSITION

The judgment is reversed.  Plaintiff shall recover costs incurred on appeal.


SANCHEZ, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.