Filed 4/20/21  Kersten v. Dental Board of Cal. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| TIMOTHY A. KERSTEN, | C083524 |
| Plaintiff and Appellant, | (Super. Ct. No. 183875) |
| v. | |
| DENTAL BOARD OF CALIFORNIA et al., | |
| Defendants and Respondents. | |

Business and Professions Code[1] section 494.5 requires that a state governmental licensing entity refuse to renew a license and suspend a license if a licensee's name is included on the Franchise Tax Board's (FTB) semiannual certified list of the 500 largest tax delinquencies (Top 500 list) unless the licensing entity has received a release from FTB.  (§ 494.5, subds. (a), (b)(1), (f)(1).)

Petitioner Timothy A. Kersten's name appeared on FTB's certified Top 500 list in October 2013.  Kersten failed to obtain a release, and respondent California Department of Motor Vehicles (DMV) refused to renew his driver's license, and respondent California Dental Board (Dental Board) suspended his dental license pursuant to section

---

[1]     Undesignated statutory references are to the Business and Professions Code.

1

494.5. Although Kersten's name did not appear on FTB's April 2014 Top 500 list or any subsequent list, respondents did not reinstate or renew his licenses because Kersten failed to obtain a release from FTB.

Kersten, in pro. per., filed a petition for writ of mandate seeking to compel respondents to reinstate and renew his licenses. The trial court granted respondents' motion for judgment on the pleadings as to Kersten's first amended petition for writ of mandate without leave to amend and entered judgment in respondents' favor.[2] The trial court found that "[u]ntil such time as a release is issued, [r]espondents do not have a clear, present ministerial duty to act."

Kersten, in pro. per., appeals, contending that the absence of his name on the April 2014 Top 500 list imposed a duty on respondents to immediately reinstate and renew his licenses notwithstanding his failure to obtain a release. Alternatively, he asserts that the trial court abused its discretion in denying his request to file a second amended petition for writ of mandate alleging that FTB removed his name from the Top 500 list after it determined his tax debt was uncollectable pursuant to subdivision (f) of section 19195 of the Revenue and Taxation Code. Kersten contends that the removal of his name pursuant to subdivision (f) of section 19195 of the Revenue and Taxation Code imposed a duty on respondents to immediately reinstate and renew his licenses, notwithstanding his failure to obtain a release. Finally, Kersten claims for the first time on appeal that respondents'

---

**2** Kersten's motion for leave to file a first amended petition was pending when respondents filed their motion for judgment on the pleadings; thus, respondents directed their motion to both the original and proposed first amended petitions. While the motion was pending, the trial court granted Kersten leave to file his first amended petition, ordered that it be filed, and deemed respondents' answers to the original petition to be answers to the amended petition as well. The first amended petition supersedes the original petition (*State Compensation Ins. Fund. v. Superior Court* (2010) 184 Cal.App.4th 1124, 1130-1131), and we shall limit our consideration to the allegations in the first amended petition.

2

failure to reinstate and renew his licenses violated his constitutional right to pursue his profession.

We shall conclude that respondents do not have a duty to reinstate or renew Kersten's licenses absent a release from FTB, the trial court properly granted respondents' motion for judgment on the pleadings without leave to amend, and Kersten's constitutional claim is barred because he failed to raise it below. Accordingly, we shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Statutory Scheme*

Effective January 1, 2007, the Legislature enacted section 19195 of the Revenue and Taxation Code, which required FTB "make available as a matter of public record each calendar year a list of the 250 largest tax delinquencies in excess of one hundred thousand dollars ($100,000) . . . as of December 31 of the preceding year." (Rev. & Tax. Code, § 19195, former subd. (a); Stats 2006, ch. 716, § 2.) That section further provided then as it does now, "For purposes of compiling the list, a tax delinquency means the total amount owed by a taxpayer to the State of California for which a notice of state tax lien has been recorded in any county recorder's office in this state." (Rev. & Tax. Code, § 19195, subd. (a).) "[A] tax delinquency does not include any of the following and may not be included on the list: [¶] (1) A delinquency for which payment arrangements have been agreed to by both the taxpayer and the Franchise Tax Board and the taxpayer is in compliance with the arrangement. [¶] (2) A delinquency for which the taxpayer has filed for bankruptcy protection pursuant to Title 11 of the United States Code. [¶] (3) A delinquency for which the person or persons liable for the tax have contacted the Franchise Tax Board and for which resolution" has been arranged. (Rev. & Tax. Code, § 19195, subd. (b).)

As for taxpayers whose names ultimately are included on the list, subdivision (f) of section 19195 of the Revenue and Taxation Code stated then, as it does now, "As

3

promptly as feasible, but no later than five business days from the occurrence of any of the following, the Franchise Tax Board shall remove that taxpayer's name from the list of tax delinquencies:  [¶] (1) Tax delinquencies for which the person liable for the tax has contacted the Franchise Tax Board and resolution of the delinquency has been arranged. [¶] (2) Tax delinquencies for which the Franchise Tax Board has verified that an active bankruptcy proceeding has been initiated.  [¶] (3) Tax delinquencies for which the Franchise Tax Board has verified that a bankruptcy proceeding has been completed and there are no assets available with which to pay the delinquent amount or amounts.  [¶] (4) Tax delinquencies that the Franchise Tax Board has determined to be uncollectible." (Rev. & Tax. Code, § 19195, subd. (f).)

In 2011, the Legislature enacted and the Governor signed Assembly Bill No. 1424 (Assembly Bill 1424), which gave FTB additional authority to collect the full amount owed by the most delinquent taxpayers.  (Stats. 2011, ch. 455.)  According to the bill's author, "As of May 2011, the top 250 delinquent tax payers owe[d] more than $180 million dollars in delinquent personal income and business taxes, with individual debts ranging from $300,000 to over $14 million."  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1424 (2011-2012 Reg. Sess.) as amended Aug. 31, 2011.)  Among other things, Assembly Bill 1424 amended section 19195 of the Revenue and Taxation Code and section 31 of the Business and Professions Code, and added section 494.5 to the Business and Professions Code.  (Stats. 2011, ch. 455, § 11.)  Subdivision (a) of section 19195 of the Revenue and Taxation Code was amended to expand the list of the largest tax deficiencies over $100,000 from the top 250 to the top *500* and to require that FTB make the list available as a matter of public record at least *twice* each calendar year.  (Rev. & Tax. Code, § 19195, subd. (a), italics added.)

4

The other subdivisions of section 19195 of the Revenue and Taxation Code quoted above remained unchanged, with one limited exception not relevant here.[3]

In addition to amending section 19195 of the Revenue and Taxation Code, Assembly Bill 1424 added subdivision (d) to section 31 of the Business and Professions Code. (Stats. 2011, ch. 455, § 1.) It provides, "Each licensee or applicant whose name appears on [the Top 500 List] shall be subject to Section 494.5."

Finally, Assembly Bill 1424 added section 494.5 to the Business and Professions Code. (Stats. 2011, ch. 455, § 3.) It provides that subject to certain specified exceptions not relevant here, "a state governmental licensing entity shall refuse to issue, reactivate, reinstate, or renew a license and shall suspend a license if a licensee's name is included on a certified list." (§ 494.5, subd. (a).) "Certified list" means the list provided by FTB of persons whose names appear on the Top 500 list pursuant to section 19195 of the Revenue and Taxation Code. (§ 494.5, subd. (b)(1).) FTB must submit a certified list to every state governmental licensing entity at least twice a year (§ 494.5, subd. (c)), and each licensing entity must determine whether a licensee is on the most recent certified list. (§ 494.5, subd. (e)(1).) If a licensee is on the most recent list, the licensing entity must immediately notify the licensee of its intent to suspend or withhold renewal of the license. (§ 494.5, subd. (e)(2).) A licensing entity "shall refuse to issue or shall suspend a license . . . no sooner than 90 days and no later than 120 days of the mailing of the preliminary notice . . ., unless the state governmental licensing entity has received a release pursuant to subdivision (h)." (§ 494.5, subd. (f)(1).) The process described in

---

[3]    When section 19195 of the Revenue and Taxation Code was enacted, subdivision (b)(3) provided that a tax delinquency does not include "[a] delinquency for which the person or persons liable for the tax have contacted the Franchise Tax Board and for which resolution of the tax delinquency *has not been rejected* by the Franchise Tax Board." (Stats. 2006, ch. 716, § 2, italics added.) In 2011, it was amended and the phrase "has not been rejected" was replaced with "has been accepted." (Stats. 2011, ch. 455, § 11.)

subdivision (h) is "the sole administrative remedy for contesting . . . the denial or suspension of a license under" section 494.5 (§ 494.5, subd. (m)), and "any license suspended under [section 494.5] will remain suspended until the state governmental licensing entity receives a release along with applications and fees, if applicable, to reinstate the license (§ 494.5, subd. (g)(2)).

Pursuant to subdivision (h) of section 494.5, a licensee who "wishes to challenge the submission of their name on a certified list . . . shall make a timely written request for release" to FTB, and FTB "shall immediately send a release to the appropriate state governmental licensing entity and the . . . licensee" if the licensee "has complied with the tax obligation, either by payment of the unpaid taxes or entry into an installment payment agreement, as described in Section 6832 or 19008 of the Revenue and Taxation Code," or "is unable to pay the outstanding tax obligation due to a current financial hardship."

B. *Kersten's Inclusion on FTB's Top 500 List*

Kersten's name appeared on the Top 500 list in October 2013, and FTB submitted a certified version of that list to state licensing entities, including Dental Board and DMV, that same month.

In October or early November 2013, Dental Board determined that Kersten's name appeared on the most recent certified Top 500 list and "commenced the procedure to suspend" Kersten's dental license as outlined in section 494.5.

On November 6, 2013, the Department of Consumer Affairs (DCA), the governmental entity under which the Dental Board operates, sent Kersten a "90 DAY NOTICE OF INTENT TO SUSPEND LICENSE," advising Kersten that "[p]ursuant to . . . section 494.5, effective February 16, 2014, your [dental] license will be suspended or will not be renewed unless a release is received from FTB." (§ 494.5, subds. (e)(2), (g)(2).)

6

On November 14, 2013, DMV refused to renew Kersten's driver's license because his name appeared on the certified Top 500 list and instead issued him a temporary license that was set to expire in 90 days. (§ 494.5, subds. (e)(2), (g).)

On November 28, 2013, Kersten submitted a "PROPOSAL TO DISCHARGE ADMINISTRATIVE TAX CLAIMS" to FTB. FTB construed the proposal as a request for release and denied it because Kersten had not satisfied any of the grounds for obtaining a release. (§ 494.5, subd. (h).)

On February 19, 2014, DCA notified Kersten that his dental license was suspended effective February 16, 2014, pursuant to section 494.5 (§ 494.5, subd. (f)) and advised him that "[t]his suspension will remain in effect until we receive a valid release from [FTB] certifying that you are in compliance with an unpaid tax delinquency . . . ."

In April 2014, FTB published another Top 500 list. Kersten's name was not included on this list. FTB submitted the certified version of this list to state licensing entities, including Dental Board and DMV. Kersten did not learn that his name was not included on the April 2014 Top 500 list until December 15, 2014.

On December 16, 2014, Kersten sent a "DEMAND FOR IMMEDIATE REINSTATEMENT OF LICENSE" to DCA and the Dental Board, informing them that his name had "been removed" from the Top 500 list and asserting that it was thus "incumbent upon the Dental Board to immediately reinstate my license." On December 19, 2014, he sent a similar demand letter to DMV. DCA responded on January 6, 2015, explaining, "To date, DCA has not received a release from [FTB] and is unable to reinstate your license. The [Dental] Board cannot override the DCA and reinstate the license. [¶] You must contact [FTB] to resolve this issue. [¶] . . . [¶] Once the DCA has

7

received the release, your license will be reinstated." DMV did not respond to Kersten's demand.[4]

C. *The Proceedings Below*

On December 21, 2015, Kersten filed a petition for writ of mandate seeking to compel Dental Board to reinstate his dental license and DMV to renew his driver's license. In the operative first amended petition, Kersten alleges that under subdivision (d) of section 31, he is no longer subject to section 494.5 because his name no longer appears on "any current list of tax delinquencies," and as a result, respondents have a duty to reinstate and renew his licenses.

Respondents moved for judgment on the pleadings (Code of Civ. Proc., §§ 438, 1094) on the ground that the first amended petition failed to present a triable issue of fact. According to respondents, the first amended petition is premised on respondents "having a duty to revoke the suspension of [Kersten's] licenses because he is not included on the most recent list of top-500 tax delinquencies," and respondents "have no such duty until and unless [FTB] issues a release."

The trial court granted respondents' motion for judgment on the pleadings and entered judgment in respondents' favor. The trial court explained that a writ of mandate pursuant to section 1085 "permits a Court to 'compel the performance of an act which the law specifically enjoins,' " and found that respondents "are not presently under a duty to reinstate [Kersten's] licenses" because he has yet to obtain a release from FTB. According to the trial court, "Only the FTB can provide a release and they are not a

---

**4**     Kersten's request for judicial notice is denied as irrelevant. In addition, Kersten offers no authority for judicially noticing portions of FTB's Collection Procedures Manual (Evid. Code, §§ 452, 459), which were not presented below. (*Brosterhous v. State Bar of California* (1995) 12 Cal.4th 315, 325-326 ["An appellate court may properly decline to take judicial notice under Evidence Code sections 452 and 459 of a matter which should have been presented to the trial court for its consideration in the first instance."].)

8

named party." The trial court rejected Kersten's argument that section 494.5 only applies to individuals who appear on the current certified Top 500 list, reasoning that such an "interpretation would belie the obvious legislative intent of the statutory scheme," which is "to suspend the driver's license and professional licenses of individuals that owe back taxes in order to compel them to pay these taxes."

DISCUSSION

I

*Standard of Review*

This is an action under section 1085 of the Code of Civil Procedure, which provides in pertinent part: "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by that inferior tribunal, corporation, board, or person." (Code Civ. Proc., § 1085, subd. (a).) "Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent [citations]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty [citation]. [Citation.]" (*People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 491.) "A ministerial act is one that a public functionary ' " 'is required to perform in a prescribed manner in obedience to the mandate of legal authority,' " ' without regard to his or her own judgment or opinion concerning the propriety of such act. [Citation.] 'Thus, "[w]here a statute or ordinance clearly defines the specific duties or course of conduct that a governing body must take, that course of conduct becomes mandatory and eliminates any element of discretion." ' [Citation.]" (*Ellena v. Department of Insurance* (2014) 230 Cal.App.4th 198, 205.)

9

The trial court granted judgment on the pleadings in respondents' favor. " 'A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action. [Citation.] A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.' [Citation.] 'All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law . . . .' [Citation.] Courts may consider judicially noticeable matters in the motion as well." (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.)

Finally, this case involves issues of statutory construction. "Statutory construction is a question of law that we review de novo." (*Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1159.) "Well-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law. [Citation.] We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context. [Citations.]" (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715.) "An individual statute must be construed in the context of the comprehensive statutory scheme of which it is a part. Statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Berkeley Center for Independent Living v. Coyle* (1996) 42 Cal.App.4th 874, 878.)[5]

---

[5] Kersten's reliance on statements made by an FTB disclosure specialist in response to a request under the Information Practices Act (Civ. Code, § 1798 et seq.) in support of his arguments concerning the meaning of the statutes at issue is misplaced. The statements were made in the context of an information act request, the statements are vague, and it is the Legislature's intent that is at issue, not that of FTB or its employees.

## II
*Respondents Do Not Have a Duty to Renew or Reinstate Kersten's Licenses Until They Receive a Release from FTB*

Kersten contends that the trial court erred in determining that respondents do not have a duty to renew or reinstate his licenses because he has not obtained a release and in granting judgment on the pleadings on that basis. While Kersten does not dispute that respondents legitimately suspended his dental license and refused to renew his driver's license under section 494.5 because his name appeared on the certified October 2013 Top 500 list and he did not obtain a release, he claims that once his name no longer appeared on the *current* Top 500 list, he was no longer subject to section 494.5 and respondents had a duty to immediately reinstate and renew his licenses. We are not persuaded.

In support of his claim, Kersten points to subdivision (d) of section 31, which states: "Each licensee or applicant whose name appears on a list of the 500 largest tax delinquencies pursuant to Section . . . 19195 . . . shall be subject to Section 494.5." Kersten asserts that because his name did not appear on the April 2014 Top 500 list (or any subsequent list), he is no longer subject to section 494.5, and respondents had a duty to immediately reinstate and renew his licenses.

Subdivision (d) of section 31 must be read in conjunction with section 494.5, to which it refers. Section 494.5 makes plain that once a licensing entity suspends or refuses to renew a license based on a licensee's inclusion on the most recent Top 500 list, the license will not be reinstated or renewed until the licensing entity receives a release from FTB. (§ 494.5, subds. (h), (j).) Indeed, subdivision (g)(2) of section 494.5 requires that the preliminary notice "inform the licensee that any license suspended under this section will remain suspended until the state governmental licensing entity receives a release," and Kersten was so informed. Had the Legislature intended to require a licensing entity immediately reinstate or renew a suspended license in the event the licensee's name is not included on a subsequent Top 500 list *without* first having received a release from FTB, it certainly would have so provided. Instead, section 494.5 provides

11

just the opposite. Subdivision (m) of that section provides, "The process described in subdivision (h) shall constitute the *sole* administrate remedy for contesting the . . . denial or suspension of a license under this section." (Italics added.) Considering these provisions together, then, we conclude that Kersten still needed to obtain a release from FTB to have his license reinstated or renewed, even though his name was not included on the Top 500 list after 2013. Kersten's claim that the omission of his name from the April 2014 Top 500 list alone created a duty on the part of respondents to renew or reinstate his licenses fails.

Kersten also contends that FTB's removal of a name from its Top 500 list pursuant to subdivision (f) of Revenue and Taxation Code section 19195 "nullifies suspension of license imposed pursuant to [section] 494.5," thereby obligating a licensing entity to immediately reinstate or renew such a license. While Kersten failed to allege that his name was removed from the Top 500 list in the operative first amended petition, he contends that the trial court abused its discretion in failing to grant his request to file a second amended petition that so alleges. As we shall explain, removal pursuant to subdivision (f) of section 19195 of the Revenue and Taxation Code does not give rise to a duty on the part of respondents to renew or reinstate his licenses absent a release from FTB; thus, the trial court did not abuse its discretion in granting the motion for judgment on the pleadings without leave to amend.

Section 19195 of the Revenue and Taxation Code, including its removal provision, predates section 494.5 by five years. As detailed above, when it originally was enacted, section 19195 required that FTB prepare a list of the top 250 tax delinquencies in excess of $100,000, and it set forth the grounds for a taxpayer's removal from that list. (Rev. & Tax. Code, § 19195, former subds. (a), (f); Stats. 2006, ch. 716, § 2.) Section 494.5 expanded the consequences for certain taxpayers whose names appeared on the Top 500 list by requiring licensing entities to "refuse to issue, reactivate, reinstate, or renew a license and [to] suspend a license if a licensee's name is included on a certified [Top 500]

12

list."  (§ 494.5, subd. (a).)  Significantly, section 494.5 expressly provides that "the sole administrative remedy for contesting . . . the denial or suspension of a license under [section 494.5]" is "[t]he process described in subdivision (h)," which sets forth the process and grounds for obtaining a release from FTB.  (§ 494.5, subd. (m).)  Thus, while subdivision (f) of section 19195 of the Revenue and Taxation Code requires FTB remove a taxpayer's name from its Top 500 list under certain specified circumstances, should a taxpayer's license be suspended or not renewed pursuant to section 494.5, as was the case here, a licensing entity is precluded from renewing or reinstating the taxpayer's license absent a release from FTB.  This is made explicit in subdivision (g)(2) of section 494.5, which requires that the preliminary notice "inform the licensee that *any license suspended under this section will remain suspended until the state governmental licensing entity receives a release* along with applications and fees, if applicable, to reinstate the license." (Italics added.)  As previously discussed, Kersten was so informed.

Kersten suggests that such an interpretation renders the removal provision set forth in subdivision (f) of section 19195 of the Revenue and Taxation Code inconsequential. Not so.  Having one's name removed from the public Top 500 list avoids or at least lessens the humiliation associated with appearing on the list.  Prior to the passage of Assembly Bill 1424, public shame appears to have been the primary (if not only) consequence of appearing on the list.  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1418 (2005-2006 Reg. Sess.) as amended Aug. 10, 2006 ["According to the author's office, this bill will help increase tax administration compliance as increased publicity will create an added incentive to remit timely payments to the state and clear overdue accounts.  By requiring a public listing, tax scofflaws will presumably take steps to resolve their delinquencies so they may avoid the shame and embarrassment of public listing."].)

Kersten also complains that unlike under the removal provision set forth in subdivision (f) of section 19195 of the Revenue and Taxation Code, "[t]here is absolutely

13

no provision in [section] 494.5[, subdivision] (h) for issuing any release on the basis of a federal bankruptcy case." As he points out, however, there is no need for such a provision given the "automatic stay" under title 11 United States Code section 362.[6]

Moreover, as a practical matter, there is no statutory provision obligating FTB to notify state governmental licensing agencies every time it removes a name from its Top 500 list pursuant to subdivision (f) of section 19195 of the Revenue and Taxation Code. It is unreasonable to assume that the Legislature intended to impose a duty on licensing agencies to reinstate or renew a license based on the occurrence of any event (the taxpayer's removal from the Top 500 list), when there is no indication that the licensing agency would have notice of such occurrence.

For all the foregoing reasons, Kersten's claim that respondents had a duty to renew or reinstate his licenses in the event FTB removed his name from the April 2014 list because it determined the tax debt was uncollectible fails.

## III

*Kersten's Substantive Due Process Claim Is Barred Because It Was Not Raised Below*

Kersten next contends that *if* FTB removed his name from the Top 500 list after determining the tax delinquency was uncollectible under subdivision (f)(4) of section 19195 of the Revenue and Taxation Code, as he seeks to allege, respondents' continued failure to reinstate or renew his licenses absent a release violated his

---

**6** Section 362(a)(6) of title 11 United States Code provides that a bankruptcy petition "operates as a stay, applicable to all entities, of—[¶] . . . [¶] . . . any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." While section 362(b)(2)(D) excepts from the ambit of the stay the "withholding, suspension, or restriction of a driver's license, a professional or occupational license, or a recreational license, under State law, as specified in section 466(a)(16) of the Social Security Act," which mandates that states implement administrative means of withholding such privileges as drivers' licenses to noncustodial parents who are in default of their support obligations, there is no similar provision relating to the suspension, withholding or restriction of professional licenses in any other context.

14

constitutional right to pursue his profession.  As respondents correctly note, Kersten did not raise this issue below when requesting leave to file a second amended petition.  "It is well established that issues or theories not properly raised or presented in the trial court may not be asserted on appeal, and will not be considered by an appellate tribunal.  A party who fails to raise an issue in the trial court has therefore waived the right to do so on appeal."  (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 117.)[7]

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1),(2).)


                                       /s/
                           BLEASE, Acting P. J.

We concur:


    /s/
MAURO, J.


    /s/
HOCH, J.

---

[7]    Kersten's request that we vacate the judgment and remand the case to the trial court for reconsideration in light of FTB's adoption of a regulation while the case was pending on appeal (Cal. Code Regs., tit. 18, § 19195-1) is denied.  We have reviewed the newly adopted regulation, including subdivision (h) cited by Kersten, and find nothing therein that would support a different ruling on remand.