Filed 3/24/25  Chevalier v. California Highway Patrol CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MATTHEW CHEVALIER, | C099666 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2022-80004060-CU-WM-GDS) |
| v. | |
| DEPARTMENT OF THE CALIFORNIA HIGHWAY PATROL, | |
| Defendant and Respondent. | |

The primary issue raised by this case involves the interplay of two statutory provisions regarding peace officer personnel files:  Government Code section 3306.5 and Penal Code section 832.5.  Government Code section 3306.5 gives peace officers the right to inspect "personnel files that are used or have been used to determine that officer's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action."  Penal Code section 832.5 provides that if an agency determines a citizen's complaint against a peace officer is unfounded, then the complaint

1

and any reports or findings relating to the complaint must be maintained in a separate file rather than in the officer's general personnel file and may not be used for punitive or promotional purposes.

Plaintiff Michael Chevalier is a California Highway Patrol (CHP) officer. He claims Government Code section 3306.5 gives him the right to inspect an "investigation file" concerning allegations of misconduct even though the investigation determined the allegations were unfounded, he was never disciplined, and the investigation file was never placed in his personnel file. The trial court disagreed, and so do we. Because CHP determined the complaint was unfounded, Penal Code section 832.5 requires it to keep the investigation file out of Chevalier's general personnel file and to maintain it in a separate file instead. It also prohibits CHP from using anything in that separate file for punitive or promotional purposes, and CHP did not, in fact, use the investigation file for such purposes. We thus find the separately maintained investigation file is not the type of file that Government Code section 3306.5 allows Chevalier to inspect. We also reject Chevalier's alternative argument that CHP's internal policies and procedures give him a right to the file. We thus affirm the judgment.

## BACKGROUND

The relevant facts are few and undisputed.[1] Chevalier states he "was the subject of a CHP internal administrative investigation I-7012105. The investigation concluded in December 2021. All allegations were unfounded. The investigation was categorized as a 'miscellaneous investigation.' " That is all Chevalier tells us about the investigation and its outcome.

---

[1] The facts come solely from the verified petition for writ of mandate, a short declaration from Chevalier, and the trial court's decision; CHP submitted no evidence in opposition to the petition. CHP does not challenge any of the facts proffered by Chevalier, and Chevalier does not challenge any of the trial court's findings.

From a one-page CHP internal investigation form that Chevalier attached to a declaration in support of his petition we learn the following. On February 26, 2021, Chevalier arrested a suspect for driving under the influence, and the suspect alleged he inappropriately touched her breasts while she was being transported to the hospital for a blood draw. The form states, "A criminal investigation was conducted by [the Ventura County Sheriff's Office] and [the suspect's] allegations were unfounded." A table of contents identifies the following additional documents: involved parties, employee profile, investigative summary, findings, chronological summary, and exhibits. The record includes the involved parties form, which identifies the suspect/complainant and the witnesses and states whether each witness's interview was described in the chronological summary and/or transcribed and attached as an exhibit. The record also includes the employee profile form, which identifies Chevalier's performance appraisals (all excellent or proficient) and two commendations, and states he has no disciplinary actions in his personnel file.

The trial court found the investigation file was not placed in Chevalier's personnel file and Chevalier was not disciplined as a result of the investigation, and Chevalier does not challenge either finding.

Six months after the investigation was completed, Chevalier requested a copy of the investigation file, and CHP provided him with what he characterized as a "heavily redacted version" (although the "heavily redacted version" is not part of the record on appeal, and we thus do not know precisely what CHP provided him with). He filed a grievance requesting the "unredacted version" of the file, "minus the audio recordings of witnesses . . . in accordance with Department policy." The "Department policy" he refers to is the Highway Patrol Manual (HPM) 10.2, Internal Investigations Manual, which deals with review, approval, and closing documentation regarding internal investigations (hereafter HPM 10.2). HPM 10.2 states:

3

> "*Pursuant to a written request, employees who have been the subject of a miscellaneous investigation shall be provided with a copy of the investigative file*, except as specified below. . . .
>
> "(1) Prior to release, the employee shall sign a memorandum acknowledging the release and confidentiality of the file, as well as the fact that portions of the investigation may have been redacted to ensure the privacy of other employees. . . . [¶] . . . [¶]
>
> "(3) *The employee shall be provided a copy of the investigation in its entirety, excluding any recordings of interviews or interrogations of other than the involved employee*." (Cal. Highway Patrol, HPM 10.2, Review, Approval, and Closing Documentation, ch. 8, § 4(f), italics added.)

CHP denied the grievance. It initially stated it had determined "per HPM 11.1" that "the only releasable information regarding this investigation was evidence provided by you, the employee," and "[a]ll other witness information and evidence associated with this investigation would be redacted." When Chevalier pointed out he had been provided with an unredacted copy of the internal investigation form that listed the names of the complainant and the witnesses, CHP stated this was "an error" and it ordered him to "delete/destroy all copies of the unredacted" form.[2] CHP acknowledged HPM 10.2 provided an employee who was the subject of a miscellaneous investigation was entitled to a copy of the investigative file in its entirety (excluding only recordings of interviews with other witnesses), but it stated Civil Code section 1798.24, "which is addressed within HPM 11.1," "supersede[d]" HPM 10.2. Civil Code section 1798.24, which is part of the Information Practices Act of 1977 (IPA) (Civ. Code, § 1798 et seq.), provides a public agency "shall not disclose any personal information in a manner that would link

---

[2]    He obviously did not do so because they are part of the record in this case.

4

the information disclosed to the individual to whom it pertains unless the information is disclosed" "[t]o the individual to whom the information pertains." (Civ. Code, § 1798.24, subd. (a).) HPM 11.1, Administrative Procedures Manual (hereafter HPM 11.1), which contains CHP's procedures for complying with the IPA, contains nearly identical language. Although not expressly stated, it appears CHP's position was that witness statements included personal information about the witness, and Civil Code section 1798.24 prohibited it from disclosing witness statements to Chevalier. CHP also stated it was in the process of revising HPM 10.2 to conform to the IPA.

Chevalier filed a petition for writ of mandate pursuant to Code of Civil Procedure section 1085, arguing Government Code section 3306.5, HPM 10.2, Civil Code section 1798.24, and HPM 11.1 all required CHP to provide him with a complete and unredacted copy of the investigation file. The trial court denied the petition, finding Government Code section 3306.5 was not applicable; Civil Code section 1798.24 only governs what information may be disclosed and to whom, but does not impose a duty to disclose information; and to the extent HPM 10.2 could be applicable, Civil Code section 1798.24 shielded the witness statements from disclosure and trumped CHP's internal policies.

## DISCUSSION

Code of Civil Procedure section 1085 provides a writ of mandate may be issued "to compel the performance of an act which the law specially enjoins." Code of Civil Procedure section 1085 thus "authorizes a trial court to issue a writ of mandate to compel an act which the law specifically requires. A petitioner seeking a writ of mandate under this section is required to show the existence of two elements: a clear, present and usually ministerial duty upon the part of the respondent, and a clear, present and beneficial right belonging to the petitioner in the performance of that duty." (*Bergeron v. Department of Health Services* (1999) 71 Cal.App.4th 17, 21-22; see also *Ellena v. Department of Ins.* (2014) 230 Cal.App.4th 198, 205 ["A court may issue a writ of mandate to compel a public agency or officer to perform a mandatory duty"].)

5

In reviewing a trial court's decision denying a petition for writ of mandate, "we review the trial court's factual findings . . . under the substantial evidence standard" and "[w]e independently review legal questions." (*Stafford v. Attending Staff Assn. of LAC + USC Medical Center* (2019) 41 Cal.App.5th 629, 636.) "Where, as here, the facts are undisputed and the issue involves statutory interpretation, we exercise our independent judgment and review the matter de novo." (*Alliance for a Better Downtown Millbrae v. Wade* (2003) 108 Cal.App.4th 123, 129; see also *Barber v. Department of Corrections & Rehabilitation* (2012) 203 Cal.App.4th 638, 644 ["We . . . independently review the court's decisions on questions of law, including the trial court's interpretation of statutory language, such as [the Public Safety Officers Procedural Bill of Rights Act]"]; *Bergeron v. Department of Health Services*, *supra*, 71 Cal.App.4th at p. 22 [where "the duty . . . asserted is one allegedly arising out of statute . . . , this court must engage in de novo review of the trial court's refusal to issue the writ"].)

Chevalier argues Government Code section 3306.5, Civil Code section 1798.24, HPM 11.1, and HPM 10.2 all impose a clear and mandatory duty on CHP to provide him with a complete copy of the investigation file. We discuss each in turn.

I

*Government Code Section 3306.5*

Chevalier's primary argument is that Government Code section 3306.5 (hereafter section 3306.5) requires CHP to provide him with a complete copy of the investigation file. Section 3306.5 is part of the Public Safety Officers Procedural Bill of Rights Act (POBRA) (Gov. Code, § 3300 et seq.). "POBRA is designed to 'maintain[] stable employer-employee relations between public safety employees and their employers' [citation], which is important because ' "[e]ffective law enforcement depends" ' upon such stability [citation]. [Citation.] POBRA achieves this goal by codifying 'a list of basic rights and protections which must be afforded all peace officers . . . by the public

6

entities [that] employ them.' " (*Bacilio v. City of Los Angeles* (2018) 28 Cal.App.5th 717, 723.)

Section 3306.5 enumerates one of the rights that must be afforded to peace officers. It provides a peace officer's employer "shall" allow the officer "to inspect personnel files that are used or have been used to determine that officer's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action." (§ 3306.5, subd. (a); see also *Gilbert v. City of Sunnyvale* (2005) 130 Cal.App.4th 1264, 1291 ["Section 3306.5 generally requires an employer, upon request, to permit an officer to inspect personnel files used to make personnel determinations concerning that officer, including termination or other disciplinary action"].) There are two other provisions in POBRA that concern peace officer personnel files—Government Code sections 3305 and 3306—and in *Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1386 (*Poole*), our Supreme Court held "it is reasonable to interpret the three provisions in parallel, given that they appear to operate in parallel, and in service of the same general goal—'to facilitate the officer's ability to respond to adverse comments potentially affecting the officer's employment status.' "[3] Government Code section 3305 gives a peace officer the right to view any adverse comment that is placed "in his personnel file, or any other file used for any personnel purposes," and Government Code section 3306 gives the officer the right "to file a written response" that will be attached to the adverse comment.[4] One of the issues in *Poole* was how to

---

[3] *Poole* involved three sections of the Firefighters Procedural Bill of Rights Act (Gov. Code, §§ 3255, 3256, & 3256.5) that are virtually identical to Government Code sections 3305, 3306, and 3306.5 of POBRA. (*Poole*, *supra*, 61 Cal.4th at p. 1385.) Because the sections are "virtually identical," the court held cases interpreting one act "are relevant to our interpretation" of the other. (*Id*. at p. 1386, fn. 2.)

[4] We note Chevalier does not contend that Government Code sections 3305 and/or 3306 impose a duty on CHP to provide him with a copy of the investigation file or that

7

interpret the phrase "personnel file, *or any other file used for any personnel purposes*" (italics added) in Government Code section 3305. The court held the Legislature included the italicized portion of the phrase "to ensure that employers will not be able to evade the statute's protections by basing personnel decisions on materials contained in files that are not designated as the agency's official personnel files." (*Poole*, *supra*, 61 Cal.4th at p. 1386.) It also held "the phrase should be interpreted to encompass any written or computerized record that, although not designated a personnel file, *can be used for the same purposes as a file of the sort described in section [3306.5]—as a record that may be used by the employer to make decisions about promotion, discipline, compensation, and the like*." (*Ibid*., italics added.)[5] The question in this case is thus whether the investigation file Chevalier seeks may be used by CHP to make these types of personnel decisions.

As we explain below, we find that, because CHP determined the complaint was unfounded, it cannot use the investigation file to make such decisions, and thus Chevalier is not entitled to it. To see why CHP cannot use the investigation file to make such personnel decisions, however, we must examine a different statute: Penal Code section 832.5 (hereafter section 832.5).

Section 832.5 requires law enforcement agencies to establish procedures for investigating citizens' complaints. (§ 832.5, subd. (a).) As relevant here, it also requires law enforcement agencies to "retain[]" such "[c]omplaints and any reports or findings relating to these complaints" "for a period of no less than 5 years for records where there

---

CHP violated either section. The petition alleged CHP violated section 3306.5 and made no reference to Government Code sections 3305 or 3306. Similarly, Chevalier did not mention Government Code sections 3305 or 3306 in the briefs he filed in the trial court.

[5] So interpreted, the court held it did not encompass "[a] supervisor's log that is used solely to help its creator remember past events." (*Poole*, *supra*, 61 Cal.4th at p. 1386.)

8

was not a sustained finding of misconduct and for not less than 15 years where there was a sustained finding of misconduct." (§ 832.5, subd. (b).) The entire investigation file at issue in this case would appear to be encompassed by the phrase "[c]omplaints and any reports or findings relating to these complaints," and because CHP determined the complaint was unfounded, it is required to retain the file for at least five years.

Section 832.5 also provides, "All complaints retained pursuant to this subdivision may be maintained *either* in the peace . . . officer's *general personnel file or* in a *separate file* designated by the department or agency." (§ 832.5, subd. (b), italics and underlining added.) " 'General personnel file' means the file maintained by the agency containing the primary records specific to each . . . officer's employment, including evaluations, assignments, status changes, and imposed discipline." (§ 832.5, subd. (d)(1).) If the agency determines the complaint is "frivolous, . . . *unfounded*, or exonerated," then the complaint "shall not be maintained in that officer's general personnel file" but instead "shall be retained in other, separate files." (§ 832.5, subd. (c), italics added.) " 'Unfounded' means that the investigation clearly established that the allegation is not true."[6] (§ 832.5, subd. (d)(2).) Management of the officer's employing agency shall have access to the separate files that contain unfounded complaints, but it "*shall not use the complaints contained in these separate files for punitive or promotional purposes*" unless it reopens the investigation as permitted by Government Code section 3304.[7]

---

[6] " 'Frivolous' means totally and completely without merit or for the sole purpose of harassing an opposing party," and " '[e]xonerated' means that the investigation clearly established that the actions of the peace or custodial officer that formed the basis for the complaint are not violations of law or department policy." (Code Civ. Proc. § 128.5, subd. (b)(2); § 832.5, subd. (d)(3); see § 832.5, subd. (c).)

[7] Government Code section 3304 provides a number of procedural rights for peace officers who are accused of misconduct. Among other things, Government Code section 3304, subdivision (d) provides no punitive action may be taken against a peace officer for misconduct unless the investigation into the alleged misconduct is completed within one

(§ 832.5, subd. (c)(2), italics added.)  Further driving that point home, section 832.5 states unfounded complaints "shall be removed from the officer's general personnel file and placed in a separate file" "prior to any official determination regarding promotion, transfer, or disciplinary action by an officer's employing department or agency." (§ 832.5, subd. (b).)  Finally, it provides, "if a complaint is removed from the officer's personnel file, any reference in the personnel file to the complaint or to a separate file shall be deleted."  (§ 832.5, subd. (c)(3).)

We take the following points from section 832.5.  First, the Legislature has differentiated between "general personnel files," on the one hand, and "separate files," on the other, with "separate" in this context meaning separate from the general personnel files.  Second, an agency must remove any unfounded complaints and any reference to such complaints from an officer's general personnel file and must instead maintain them in a separate file.  Third, prior to making any determination regarding promotion, transfer, or discipline, the agency must ensure any unfounded complaints are removed from the officer's general personnel file and placed in a separate file.  Fourth, and finally, although management has access to these separate files, it cannot use any unfounded complaints maintained in the separate files for punitive or promotional purposes.  Although not explicitly stated, it appears clear to us that the purpose of requiring the agency to maintain unfounded complaints in a separate file rather than an officer's general personnel files is to ensure they are not used for punitive and promotional purposes.  Given all of this, we find the separate files in which an agency is required to maintain unfounded complaints are *not* files "that may be used by the employer to make decisions about promotion, discipline, compensation, and the like" for purposes of section 3306.5.  (*Poole*, *supra*, 61 Cal.4th at p. 1386.)

---

year of its discovery.  Subdivision (g) (originally subd. (f)), provides an investigation may be reopened based on the discovery of "[s]ignificant new evidence . . . that is likely to affect the outcome" if certain conditions exist.

In this case, it is undisputed that CHP determined the complaint was unfounded; Chevalier was not disciplined; and the investigation file was not placed in his personnel file. Although not explicitly stated, we will assume CHP is complying with the law and is retaining the investigation file in the separate files described in section 832.5, particularly in the absence of any argument or evidence from Chevalier suggesting otherwise. (See *Richardson v. Department of Motor Vehicles* (2018) 25 Cal.App.5th 102, 113 ["We must presume, in the absence of contrary evidence, that a public agency follows its official duties as prescribed by the applicable statutory law"].) Section 832.5 thus prohibits CHP from using the investigation file "for punitive or promotional purposes."[8] (§ 832.5, subd. (c)(2).) Given all of this, we find the investigation file is not among the "personnel files that are used or have been used to determine [Chevalier's] qualifications for employment, promotion, additional compensation, or termination or other disciplinary action" within the meaning of section 3306.5.

The court in *McMahon v. City of Los Angeles* (2009) 172 Cal.App.4th 1324 (*McMahon*) reached the same conclusion on similar facts. The officer in that case was the subject of numerous citizen complaints that his department determined were unfounded and were "filed in bad faith by residents who were upset with the officer's successful antigang efforts." (*Id*. at p. 1327.) A year or so after the investigations were completed, the officer asked to view the underlying investigative materials, including "audiotapes and transcripts of witness interviews, surveillance notes, case notes, chronological files, summaries, and memoranda," but the department denied the request. (*Id*. at p. 1330.) The officer filed a petition for writ of mandate, arguing section 3306.5 gave him the right to inspect all undisclosed documents and materials compiled during

---

**8**     CHP is not prohibited from using the investigation file "for punitive or promotional purposes" if it reopens the investigation, in which case Chevalier would be entitled to all of POBRA's procedural rights and protections pertaining to investigations.

11

the investigation.  The trial court denied the petition, and the appellate court affirmed.  (*McMahon*, at pp. 1330-1331.)

The court began its analysis by noting the "obligation to disclose the underlying investigative materials turns on whether they qualify as 'personnel files that *are used* or *have been used* to determine that officer's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action' under . . . section 3306.5."  (*McMahon*, *supra*, 172 Cal.App.4th at p. 1333.)  It also noted that section 832.5 was "closely related" to section 3306.5 and had a "bearing on" its intended purpose because it required that "complaints found meritless [be] excised from the personnel file used by the officer's employer for making personnel decisions."  (*McMahon*, at pp. 1332, 1333.)  It then proceeded to separately analyze the "are used" and "have been used" prongs of section 3306.5.

It found the "have been used" prong presented "no significant interpretive difficulty," and required the officer to show the department actually "used or relied on the undisclosed materials for any of the enumerated personnel purposes."  (*McMahon*, *supra*, 172 Cal.App.4th at p. 1333; see also *Poole*, *supra*, 61 Cal.4th at p. 1387 ["a document . . . *may* come within the disclosure requirement even if not formally entered into the official personnel file, if the document . . . was actually used by the employer in making a personnel decision"].)  The officer argued the department transferred him to another division as a result of the complaints, but the court found it was undisputed the officer retained the same rank and pay and there was no evidence the transfer was punitive.  (*McMahon* at p. 1333.)  The court thus found the officer failed to meet his burden of showing the department actually used the undisclosed materials for making any of the enumerated personnel decisions.  (*Ibid*.)

The court then found the "are used" prong required the officer to show "the records he seeks *are officially authorized* to be used for the statutory purposes."  (*McMahon*, *supra*, 172 Cal.App.4th at p. 1335, italics added.)  It found the officer could

not make such a showing because "section 832.5 . . . mandates that frivolous, unfounded, or exonerated citizen complaints such as the ones here at issue 'shall not be maintained in that officer's general personnel file,' but must be separately maintained"; there was no evidence the department failed to comply with its legal obligation to maintain the undisclosed materials in a file that was separate from "the personnel files that [it] was entitled to use for making the personnel decisions listed in . . . section 3306.5"; and "it would be unreasonable and contrary to legislative intent to read . . . section 3306.5 . . . as requiring the Department to disclose internal investigative materials that the Department is not authorized to use in making the enumerated personnel determinations." (*Ibid*.)

We agree with *McMahon*'s analysis. Chevalier argues *McMahon* was wrongly decided, but he fails to clearly explain why. He appears to contend it was wrongly decided because it permits law enforcement agencies to deny access to "records relating to misconduct allegations that were unfounded so long as the records are not maintained in the officer's general personnel file" even though "[s]uch arbitrary distinctions between different personnel files are inconsistent with [*County of*] *Riverside* [*v. Superior Court* (2002) 27 Cal.4th 793], [*Sacramento Police Officers Assn. v.*] *Venegas* [(2002) 101 Cal.App.4th 916], *Seligsohn* [*v. Day* (2004) 121 Cal.App.4th 518], and the plain language of . . . section 832.5[, subdivision ](c)." He does not clearly explain how *McMahon* is inconsistent with *Riverside*, *Venegas*, *Seligsohn*, or section 832.5, subdivision (c).

The issue in *Riverside* was whether a background investigation file that contained a complaint charging an officer with illegal activities was a "personnel file, or any other file used for any personnel purposes" within the meaning of Government Code section 3305. (See *County of Riverside v. Superior Court*, *supra*, 27 Cal.App.4th at pp. 795, 797-802.) In holding that it *was* such a file, the court noted: "The label placed on the investigation file is irrelevant. The materials in the file unquestionably ' "may serve as a basis for affecting the status of the employee's employment" ' [citation]; indeed, that is

13

the very purpose of the background investigation." (*Id*. at p. 802.) *Venegas* and *Seligsohn* repeated this statement, and *Seligsohn* added that an employer " 'may not avoid the requirements of the statute by maintaining a "personnel file" for certain documents relating to an employee, [and] segregating elsewhere under a different label materials which may serve as a basis for affecting the status of the employee's employment.' " (*Seligsohn v. Day*, *supra*, 121 Cal.App.4th at p. 526; see *id*. at pp. 526-527; *Sacramento Police Officers Assn. v. Venegas*, *supra*, 101 Cal.App.4th at p. 925 (*Venegas*).)

We agree the label placed on a particular file is irrelevant (and we note *McMahon* never suggested otherwise). That means, for example, that CHP cannot shield documents from section 3305.6's inspection requirement simply by placing them in a file labeled *Not a Personnel File* or *Separate File* or *Confidential—Do Not Disclose*. But it is not the label placed on the file that is determinative in this case. It is the fact that, however the investigation file is labeled, section 832.5 prohibits CHP from using it for punitive or promotional purposes.

We also note *Riverside*, *Venegas*, and *Seligsohn* are distinguishable from this case because they did not involve a complaint the agency determined was unfounded. In *Riverside*, the agency did not investigate the complaint or make any findings thereon; in *Venegas*, the agency investigated the complaint, removed the officer from his assignment pending the investigation, but ultimately took no adverse action (it is suggested it found the complaint was " 'not sustained,' " meaning "not affirmatively disproved" but "not established sufficiently to support disciplinary action"); and in *Seligsohn*, the agency determined there was insufficient evidence to support one complaint and a second complaint was withdrawn and the investigation " 'ceased' " as a result. (*County of Riverside v. Superior Court*, *supra*, 27 Cal.4th at pp. 795-796; *Venegas*, *supra*, 101 Cal.App.4th at pp. 920, 927; *Seligsohn v. Day*, *supra*, 121 Cal.App.4th at pp. 521-522.) *Riverside* and *Seligsohn* thus had no reason to, and did not, mention section 832.5 or its prohibition on using unfounded complaints for punitive or promotional purposes,

14

and "it is well established that cases do not stand for propositions not addressed therein." (*Thomas v. Stenberg* (2012) 206 Cal.App.4th 654, 664.)

*Venegas* did discuss section 832.5, but we are not convinced its discussion helps Chevalier. The agency in *Venegas* stated it treated complaints that were " 'not sustained' " the same way it treated complaints that were frivolous, unfounded, or exonerated, and it maintained all such complaints "only on internal affairs index cards" and not in the officer's general personnel file. (*Venegas*, *supra*, 101 Cal.App.4th at p. 928.) The issue in *Venegas* was whether, pursuant to Government Code sections 3305 and 3306, the officer had a right to view and respond to any adverse comments on the index card, and the court ultimately held he did. In explaining its holding, the *Venegas* court quoted the portion of section 832.5, subdivision (c) that provides unfounded complaints " 'shall be retained in other, separate files *that shall be deemed personnel records* for purposes of the California Public Records Act [citation] and [s]ection 1043 of the Evidence Code,' " which governs discovery and disclosure of peace officer personnel records in criminal or civil actions. (*Venegas*, at p. 928.) After this quote, the court then stated the internal affairs index card was "a 'file,' so to speak, statutorily defined to be a personnel record for purposes of disclosure." (*Ibid*.) Although not entirely clear, it is possible to read *Venegas* as holding that section 832.5 defines the "separate files" in which frivolous, unfounded, and exonerated complaints must be maintained as "personnel records" for purposes of Government Code section 3305 (which gives an officer the right to view any adverse comment before it is placed in his or her personnel file). In any event, it appears Chevalier reads *Venegas* this way because he argues, "While . . . section 832.5[, subdivision ](c) provides such investigation [i.e., into complaints determined to be unfounded] 'shall not be maintained in that officer's general personnel file,' the statute requires 'these complaints shall be retained in other, separate files that shall be deemed personnel records.' Reversal is necessary to the correct the

court's finding that the investigation [files] are not personnel records subject to POBRA." We disagree.

Section 832.5 states the separate files in which an agency must maintain unfounded complaints are "personnel records for purposes of the California Public Records Act . . . and Section 1043 of the Evidence Code." (§ 832.5, subd. (c).)[9] But it does not state they are personnel records for purposes of section 3306.5. We also note section 3306.5 does not use the phrase personnel records; it uses the phrase "personnel files." " 'Ordinarily, where the Legislature uses a different word or phrase in one part of a statute than it does in other sections or in a similar statute concerning a related subject, it must be presumed that the Legislature intended a different meaning.' " (*Romano v. Mercury Ins. Co.* (2005) 128 Cal.App.4th 1333, 1343.) We thus see nothing in the plain language of section 832.5 that suggests the Legislature intended the separate files in which unfounded complaints must be maintained shall be deemed personnel files for purposes of section 3306.5.

Assuming *McMahon* was not wrongly decided, Chevalier alternatively argues the investigation file is the type of file identified by section 3306.5 and he thus has a right to inspect it. For example, he argues the investigation file *has been used* by CHP "to

---

[9] Subject to certain exceptions, peace officer "personnel records" are deemed "confidential" and are not subject to disclosure under the California Public Records Act (Gov. Code, § 7920.000 et seq.). (Pen. Code, § 832.7, subd. (a); see *id*., subd. (b)(9); *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 289 ["Because [Penal Code] section 832.7 deems peace officer personnel records and information obtained from those records to be 'confidential,' they are exempt from disclosure under the [Public Records] Act"].) Evidence Code section 1043 provides that peace officer "personnel records" are only subject to discovery and disclosure in a criminal or civil action if the party seeking the records shows good cause for the disclosure. (Evid. Code, § 1043; see also *Association for Los Angeles Deputy Sheriffs v. Superior Court* (2019) 8 Cal.5th 28, 41-43 [describing procedures for obtaining discovery of peace officer personnel records].)

16

determine [his] qualifications for employment, promotion, additional compensation, or termination or disciplinary action." (§ 3306.5.) His argument is not entirely clear, but he appears to contend CHP used the file to determine "whether or not" to discipline him, and even though CHP decided not to discipline him, that is sufficient to show the file "has been used within the meaning of [section] 3306.5." We do not read section 3306.5 so broadly. The file has been used to determine the complaint was unfounded and the allegations were not true. Because it determined the complaint was unfounded and the allegations were not true, CHP never had to determine whether to discipline Chevalier. As our Supreme Court has stated in interpreting a different provision in POBRA,[10] "The purpose of an [investigation] is to determine whether there is any truth to the allegations of misconduct made against an officer and, *if so*, whether to commence disciplinary proceedings." (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 578, italics added.) In other words, an employer does not make personnel determinations based on allegations of misconduct unless it first finds the allegations are true. Or, as CHP puts it, "Unfounded complaints, like the citizen complaint here, never make it to the second step because the precondition of truth is not satisfied."

Chevalier also quotes *Venegas* for the proposition that "the function of a police agency's internal affairs section is to 'police the police' by investigating complaints and incidents to determine an officer's fitness to continue to serve, and whether disciplinary or other corrective action is required. By any definition, that is a personnel purpose." (*Venegas*, *supra*, 101 Cal.App.4th at p. 928.) It appears he contends this demonstrates CHP's investigation was undertaken for a "personnel purpose," and that this somehow brings the entire investigation file within the inspection right provided by section 3306.5.

---

[10]   That different provision is Government Code section 3303, which governs procedures that apply when a peace officer is "subjected to interrogation" by his or her employer "that could lead to punitive action."

17

We disagree. Even though the investigation may have been undertaken for a personnel purpose, once CHP determined the complaint was unfounded, section 832.5 prohibited it from using the file for a personnel purpose.

Chevalier also argues he should, at a minimum, be permitted to inspect the type of documents that the officer in *McMahon* was permitted to inspect. We are told in *McMahon* that, prior to the commencement of litigation, the department provided the officer with "each complaint, along with various other documents *mandated by the Department's internal regulations*," including "the complaint face sheet, complaint adjudication form, employee interview form, and the commanding officer's letter of transmittal." (*McMahon*, *supra*, 172 Cal.App.4th at p. 1329, italics added.) Chevalier appears to contend he is entitled to inspect the same documents. We disagree. The fact that one police department provided copies of certain documents to an officer pursuant to its own internal regulations does not demonstrate that *section 3306.5* requires CHP to permit its officers to inspect those documents. (We will discuss whether CHP's internal regulations require it to provide Chevalier with the investigation file below.)

Chevalier also argues the "are used" prong of section 3306.5 is satisfied if the file could be used in the future for a statutory purpose (i.e., to make determinations about the officer's "qualifications for employment, promotion, additional compensation, or termination or other disciplinary action"). We largely agree. (See, e.g., *Poole*, *supra*, 61 Cal.4th at p. 1387 ["a document . . . *may* come within the disclosure requirement even if not formally entered into the official personnel file, *if the document was . . . maintained in such a manner that it would be available to those making personnel decisions in the future* (first italics in original, second italics added)"]; *Oakland Police Officers' Assn. v. City of Oakland* (2021) 63 Cal.App.5th 503, 523 [Gov. Code, §§ 3305 & 3306 address "the unfairness in allowing law enforcement agencies to maintain undisclosed allegations in a separate confidential file *with potential consequence for future personnel decisionmaking*" (italics added)].) We also note that although Chevalier criticizes

18

*McMahon*, it, too, held the "are used" prong of section 3306.5 applies to files that "are officially authorized to be used for the statutory purposes." (*McMahon*, *supra*, 172 Cal.App.4th at p. 1335.)

In the trial court, Chevalier did not identify how the investigation file could be used in the future for the statutory purposes. In the petition he alleged only that he "is informed and believes and hereby alleges that the administrative investigation report can be used by [CHP] for purposes of employment status, promotion, additional compensation, or disciplinary matters . . . regardless of [CHP's] insistence that it will not use it for this purpose." He proffered neither evidence to support his belief nor examples of how the file could be used for a statutory purpose.

Chevalier now argues there are three ways the investigation file could affect his employment status in the future, which he claims brings the file within the "are used" prong of section 3306.5. First, if he applies for another law enforcement job, the file could be disclosed as part of a required background investigation. Second, the file could be disclosed pursuant to a *Pitchess* motion (*Pitchess v. Superior Court* (1974) 11 Cal.3d. 531)[11] or a California Public Records Act request. And third, pursuant to sections 13510.8 and 13510.9 of the Penal Code, the file could be disclosed to the Commission on Peace Officer Standards and Training, which could conduct its own investigation notwithstanding CHP's finding the complaint was unfounded, and initiate proceedings to revoke Chevalier's peace officer certification. Chevalier did not raise these arguments below, and we decline to consider them on appeal.

"The traditional rule is that 'a party must raise an issue in the trial court if they would like appellate review.' " (*Ramirez v. Department of Motor Vehicles* (2023) 88 Cal.App.5th 1313, 1335.) Although an appellate court has *discretion* to consider a

---

[11] A *Pitchess* motion is a motion pursuant to Evidence Code section 1043 seeking disclosure and discovery of peace officer personnel files.

" 'new theory raising a pure question of law on undisputed facts,' " it has "no mandatory duty" to do so. (*Ibid*.; see also *Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1275, fn. 3 ["Merely because an issue is one of law, does not give a party license to raise it for the first time on appeal . . . . Whether an appellate court will entertain a belatedly raised legal issue always rests within the court's discretion"].) Fairness is the primary reason for requiring a party to raise an issue in the trial court in order to raise it on appeal. " 'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. [Citation.] Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier.' " (*Wittenberg v. Bornstein* (2020) 51 Cal.App.5th 556, 567.) Assuming without deciding that Chevalier's new arguments raise pure questions of law on undisputed facts, we decline to consider them. (See *Kucera v. Lizza* (1997) 59 Cal.App.4th 1141, 1150 ["We do have discretion to address pure questions of law posed for the first time on appeal [citation], but we will not do so here"].)

For all of the reasons stated above, we find the investigation file is not the type of personnel file identified in section 3306.5, and section 3306.5 thus does not give Chevalier the right to inspect it.

II

*Civil Code Section 1798.24 and CHP Policies*

Although Chevalier alleged in his petition that Civil Code section 1798.24 (hereafter section 1798.24) and HPM 11.1 both require CHP to produce the investigation file, it is not clear whether he continues to press that argument here. Assuming he does, we reject it.

20

As noted above, section 1798.24 is part of the IPA, which "limits the right of governmental agencies to disclose personal information about an individual and imposes liability on agencies and individuals for improperly disclosing personal information maintained by agencies." (*Hurley v. Department of Parks & Recreation* (2018) 20 Cal.App.5th 634, 641.)  Section 1798.24 provides, "An agency shall not disclose any personal information in a manner that would link the information disclosed to the individual to whom it pertains unless the information is disclosed . . . [¶] . . . [t]o the individual to whom the information pertains." (§ 1798.24, subd. (a).)  By its plain terms, section 1798.24 *prohibits* an agency from disclosing personal information *unless* the disclosure is made to the individual to whom the information pertains.  (See also, e.g., *Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 445 ["IPA prohibits the disclosure of 'personal information,' . . . by any state agency except under certain circumstances"].)  But it does not *require* an agency to disclose personal information to the individual to whom the information pertains.  Thus, even if we were to agree (as Chevalier argues) that the entire investigation file pertains to him, section 1798.24 does not require CHP to disclose it to him.  At best, it *permits* CHP to disclose it to him.  HPM 11.1 makes this point even more clearly.  It states: "*PERMISSIBLE* DISCLOSURES.  The IPA precludes the disclosure of personal information in a manner that would link the information to the individual.  Exceptions to this preclusion are found in . . . California Civil Code Section 1798.24 and *permit disclosure* to, among others, the individual about whom the information pertains." (Cal. Highway Patrol, HPM 11.1, Information Practices Act, ch. 27, § 7, italics added.)

A noted above, Code of Civil Procedure section 1085 authorizes a court to issue a writ of mandate "to compel a public agency . . . to perform a mandatory duty." (*Ellena v. Department of Ins.*, *supra*, 230 Cal.App.4th at p. 205.)  Because neither section 1798.24 nor HPM 11.1 require CHP to disclose anything to anybody, they create no mandatory

duty that can be enforced by writ of mandate. Or as the trial court correctly found, "Without such a duty, no claim exists pursuant to Code of Civil Procedure section 1085."

Chevalier's final argument is that HPM 10.2 provides him with "a separate and independent right to a copy of the investigation in its entirety, excluding any recordings of interviews or interrogations of other than the involved employee." HPM 10.2 provides, "Pursuant to a written request, employees who have been the subject of a miscellaneous investigation *shall* be provided with a copy of the investigative file" (and we note it is undisputed the investigation in this case was classified as miscellaneous). (Cal. Highway Patrol, HPM 10.2, *supra*, ch. 8, § 4(f), italics added.) HPM 10.2 also provides, "Prior to release, the employee shall sign a memorandum acknowledging the release and confidentiality of the file, as well as the fact that portions of the investigation may have been redacted to ensure the privacy of other employees," and, "The employee *shall be provided a copy of the investigation in its entirety*, excluding any recordings of interviews or interrogations of other than the involved employee." (*Id*., § 4(f)(1), (3), italics added.) On its face, it certainly appears that HPM 10.2 requires CHP to provide Chevalier with a copy of the investigative file "in its entirety," excluding only recordings of interviews or interrogations of witnesses other than Chevalier, and (possibly) portions of the file that are redacted to ensure the privacy of others.

CHP argues a writ of mandate can only be issued to compel an agency to perform an act required by law, and HPM 10.2, which it describes as an internal policy, is not the equivalent of a law and thus cannot form the basis for writ relief. We disagree, because case law establishes that, in appropriate circumstances, a writ can be issued to compel an agency to comply with its own policies and procedures. (See, e.g., *Pozar v. Department of Transportation* (1983) 145 Cal.App.3d 269, 271 [writ of mandate may be issued to "direct an agency to follow its own rules"].) Indeed, in *Galzinski v. Somers* (2016) 2 Cal.App.5th 1164, this court held a writ of mandate may be issued to compel a police department to follow its procedures for handling citizens' complaints. In particular, we

held "a 'published procedure' adopted by a public entity which provides that the public entity *will* do a certain thing . . . *can* provide the basis for a ministerial duty that may be enforced by means of a writ of mandate." (*Id*. at p. 1172.) *Galzinski* thus teaches that, if HPM 10.2 provides CHP "*will* do a certain thing," then HPM 10.2 "*can* provide the basis for a ministerial duty that may be enforced by means of a writ of mandate."[12]

CHP, however, argues the IPA *prohibits* it from disclosing what it refers to as "the entire unredacted investigation file." We have no trouble concluding that if a statute conflicts with a public entity's internal policies, the statute would prevail (and Chevalier does not seriously suggest otherwise). The question is whether the IPA prohibits CHP from disclosing those parts of the file it has not already disclosed to Chevalier.

As noted above, section 1798.24 provides, "An agency shall not disclose any personal information in a manner that would link the information disclosed to the individual to whom it pertains unless the information is disclosed . . . [¶] . . . [t]o the individual to whom the information pertains." (§ 1798.24, subd. (a).) " '[P]ersonal information' " is defined as "*any information* that is maintained by an agency *that identifies or describes an individual*, *including*, but not limited to, *the individual's name*, social security number, physical description, home address, home telephone number, education, financial matters, and medical or employment history. *It includes statements made by, or attributed to, the individual*." (Civ. Code, § 1798.3, subd. (a), italics added.) So defined, personal information would include witness statements obtained by CHP as part of its investigation into the allegations against Chevalier. Moreover, these statements

---

[12] Given this conclusion, we need not, and do not, address Chevalier's argument, raised for the first time in his reply brief, that the Ralph C. Dills Act (Gov. Code, § 3512 et seq.) imposes a ministerial duty on CHP to follow its policies until they are changed through the collective bargaining process. (See *Grassi v. Superior Court* (2021) 73 Cal.App.5th 283, 303, fn. 10 ["We do not generally consider arguments raised for the first time in a reply"].)

would both "identif[y] . . . an individual" (i.e., the witness) by "name" and be "statements made by, or attributed to, th[at] individual." Viewed in this way, the witness statements consist of personal information *about the witness*, and the IPA would prohibit CHP from disclosing the witness statements *to Chevalier*.[13]

Another provision of the IPA—Civil Code section 1798.42—supports this view. It provides, "In disclosing information contained in a record to an individual [i.e., Chevalier], an agency shall not disclose any personal information relating to another individual [i.e., the witnesses] which may be contained in the record. To comply with this section, an agency shall, in disclosing information, delete from disclosure such information as may be necessary." HPM 11.1 reiterates this by stating, "Personal information relating to other individuals [i.e., witnesses] which may be contained in a record pertaining to the individual requesting the record [i.e., Chevalier], shall not be provided, consistent with California Civil Code Section 1798.42. [CHP] shall make reasonable efforts to redact such personal information relating to other individuals before the record is made available to the individual making the request." (Cal. Highway Patrol, HPM 11.1, *supra*, ch. 27, § 11(a).)

CHP argues that both the IPA and HPM 11.1 require it to "protect the confidentiality of . . . witnesses," and that it "properly redacted the investigation file, in order to keep confidential other individuals' attributed statements and identifying particulars."

---

[13] Chevalier argues the witness statements contain personal information about him, not about the witnesses, and he contends he is thus "the individual about whom the personal information pertains." The witness statements may indeed contain personal information about Chevalier. But they also contain "personal information" about the witness as that term is defined by Civil Code section 1798.3 (i.e., because they identify the witness by name and consist of "statements made by, or attributed to" the witness), and to the extent they do, the IPA prohibits CHP from disclosing them to Chevalier.

Chevalier disagrees. He argues HPM 11.1 "has no application here" because it is solely "a response procedure for [the California Public Records Act] and [the federal Freedom of Information Act] requests," and only applies when a member of the public requests documents pursuant to one of those acts. We disagree. HPM 11.1 is titled "Information Practices Act" and is replete with references to the IPA and its requirements. It never mentions the federal Freedom of Information Act, and its only reference to the California Public Records Act is to state "[d]isclosure made pursuant to the Public Records Act [citation] is different from disclosure pursuant to the provisions of the IPA." (Cal. Highway Patrol, HPM 11.1, *supra*, ch. 27, § 7(a).)

Chevalier also argues CHP's interpretation of the IPA (and HPM 11.1) is "at odds with" *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194. In *Skelly*, our Supreme Court held that, before a public agency can discipline or discharge an employee, due process principles require it to provide the employee with "notice of the proposed action, the reasons therefor, a copy of the charges and *materials upon which the action is based*, and a right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id*. at p. 215, italics added.) Chevalier thus notes that if he had been disciplined as a result of the investigation, *Skelly* would require CHP to provide him with the investigation file, including witness statements, even though CHP claims the IPA prohibits it from providing him with those statements. He then writes, "There is no exception in the [IPA] that allows disclosure in discipline cases to comply with the *Skelly* decision. Therefore, [CHP's] interpretation would require [it] to violate either the [IPA] or an officer's due process rights in relation to discipline proceedings." This may be true, but it is not clear how it helps Chevalier. As noted, the *Skelly* rule is required by due process principles, and it is axiomatic that a constitutional provision trumps a conflicting statute. (See *Delaney v. Superior Court* (1990) 50 Cal.3d 785, 800-801, fn. 11.) Thus, if there is a conflict between the IPA and the due process clause, the due process clause prevails.

25

That leaves just one potential issue. We agree CHP could properly redact witness names and their statements pursuant to the IPA and HPM 11.1, but we do not know whether it redacted more than that. Chevalier states only that CHP produced "a heavily redacted copy of the administrative investigation to [him], to include materials that only reflected my own statements. *It did not include materials or statements of other individuals interviewed or involved with the investigation*." (Italics added.) As noted above, however, the record does not include this "heavily redacted copy," and we thus do not know precisely what CHP produced. Based on Chevalier's statement, however, it appears CHP *only* redacted "materials or statements of other individuals interviewed or involved with the investigation," and, for the reasons discussed above, we conclude CHP properly refused to disclose such statements.

## DISPOSITION

The judgment is affirmed, and CHP shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


_____/s/_____
EARL, P. J.

We concur:


_____/s/_____
MESIWALA, J.


_____/s/_____
FEINBERG, J.


26